May 8, 2018

**Supreme Court**

No. 2017-91-Appeal.
(PC 14-611)

Ian DeLong                          :

v.                          :

Rhode Island Sports Center, Inc., et al.     :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Ian DeLong                    :

v.                    :

Rhode Island Sports Center, Inc., et al.    :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.**  The plaintiff, Ian DeLong, a former college hockey player, alleged that he inhaled noxious fumes while playing in a game at an arena owned by the defendant DRF Arena, LLC, and operated by the defendant Rhode Island Sports Center, Inc.  He claimed that he, along with several other teammates, became ill upon returning to school after a hockey game against Johnson & Wales University at the defendants' arena.  The plaintiff alleged that he began coughing up blood the next morning and sought medical treatment.  He ultimately brought a negligence suit against the defendants, who filed and prevailed on a motion for summary judgment.  The plaintiff timely appealed to this Court.

This case came before the Supreme Court, sitting at Lincoln High School, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided.  After considering the parties' written and oral submissions, and after reviewing the record, we conclude that cause has not been shown and that this case may be

decided without further briefing or argument.  For the reasons set forth in this opinion, we vacate the judgment of the Superior Court and return the case thereto for trial.

## I

## Facts and Travel

In the complaint that he filed in the Superior Court, plaintiff alleged that on February 17, 2011, defendants negligently maintained their ice rink facility in North Smithfield by allowing noxious fumes to permeate the air.  This, according to plaintiff, created a dangerous condition on the premises, and defendants failed to exercise reasonable care or provide adequate warnings.  As a result, plaintiff claimed, he became ill with acute respiratory problems, including carbon monoxide and nitrogen dioxide poisoning.  The defendants answered, denying that plaintiff was entitled to relief.

Discovery ensued, and on May 13, 2015, defendants filed a motion for summary judgment.  They argued that there were no genuine issues of material fact regarding (1) the existence of a dangerous or defective condition; (2) the notice to defendants of any such condition; and (3) the causal connection between that condition and any injury that may have been sustained by plaintiff.  Indeed, defendants maintained that plaintiff had failed to put forth evidence of any of those elements, all of which are necessary to establish a premises liability claim.  Therefore, defendants asserted, they were entitled to judgment as a matter of law.

To support their motion, defendants pointed to plaintiff's deposition statement that he neither saw nor smelled any unusual fumes while playing hockey at defendants' ice rink.  They further highlighted the dearth of scientific evidence as to the air quality in the arena on the night of the game.  In fact, defendants proffered evidence that the carbon monoxide levels in the facility that night were zero, as demonstrated by the ice rink attendant's twice-daily notation of

- 2 -

the air quality reading and the Rhode Island Department of Health's confirmation the following day. Therefore, defendants argued, plaintiff had no proof that there was a dangerous or defective condition present in the arena, thus failing to prove even the first element of his claim.

Continuing to the remaining elements, defendants maintained that they had no notice, actual or constructive, of any potential defect, even assuming one were to have existed. In making that assertion, they relied on the deposition testimony of two employees: Rick Beauregard, the facilities manager, and David L'Etoile, who was responsible for operating a Zamboni to resurface the ice before, during, and after games.[1] Each stated that he was not aware of any complaints ever having been made regarding noxious fumes, and L'Etoile attested that he never observed or smelled any fumes while resurfacing the ice rink. Finally, as to causation, defendants underscored plaintiff's own deposition statements. The plaintiff admitted that, despite his assumption and belief that it was noxious fumes within the arena that caused his injury, he could not say with complete certainty what it was that made him fall ill. And, according to defendants, even if plaintiff were to prove that he was exposed to airborne toxins, he had no evidence that that exposure occurred on defendants' premises.

The plaintiff opposed defendants' motion for summary judgment. By way of background, he explained that, after a game between his team, Curry College, and Johnson & Wales University at defendants' ice rink, "[p]laintiff and a large number of his teammates suffered respiratory illnesses" from nitrogen dioxide, a toxin that can be emitted by Zambonis. On the night in question, the Curry College hockey team traveled to the game by bus, and plaintiff said he detected no fumes during the ride. Once at the rink, the team went into the

---

[1] A "Zamboni," which derives its name from its inventor, is a machine used to resurface an ice rink. The resurfacer shaves the ice, washes the ice, and leaves behind a layer of fresh ice-making water, which freezes to create a smooth sheet of ice.

visitors' dressing room, outside of which were situated two propane-fueled Zambonis; one was stored out in the open next to the locker room, the other in a garage near the locker room. One of those Zambonis was used to resurface the ice between the first and second periods, between the second and third periods, and at the end of the game. After the game, the team remained in the rink for a little over half an hour before returning to Curry College on the same bus that had transported them to the rink. Later that evening, one of plaintiff's teammates asked plaintiff—who himself was already coughing—to bring him to the hospital because he was coughing up blood. By the next morning, plaintiff, too, was coughing up blood and he went to the emergency room. A number of plaintiff's teammates reportedly also experienced the same symptoms. At the hospital, the plaintiff was diagnosed with an acute lung injury resulting from carbon monoxide and nitrogen dioxide poisoning.

The plaintiff responded to defendants' summary-judgment arguments with evidence of his own. In terms of proof of a defect, and to rebut defendants' contention that the Department of Health air quality report was dispositive of the issue, plaintiff offered a regulation showing that the Department of Health does not require testing for nitrogen dioxide and that it does not do so itself. Furthermore, the arena was not tested for carbon monoxide by the Department of Health until the next day, and simply opening doors or windows can properly ventilate a facility and improve air quality, as James Bruckshaw, an official from the department, acknowledged in his deposition. The plaintiff also provided an affidavit from the head coach of his hockey team, Robert Davies. Coach Davies submitted that, based on a lifetime spent in ice rinks, he can immediately discern air quality when entering a rink. He said that, upon walking into defendants' facility on February 17, 2011, he could smell some kind of gas. In addition, Coach Davies noted that the Zamboni broke down while it was resurfacing the ice during an

intermission, causing a delay in the action. He further swore that this Zamboni produced a gaseous odor that progressively worsened over time and that it "released a thick blue film that permeated the air." Coach Davies thereafter heard several of his players begin to cough. In that regard, plaintiff produced affidavits from two of his teammates who recounted smelling gas in the air inside the arena and experiencing symptoms similar to plaintiff's upon returning to Curry College. And lastly, as further evidence of the presence of a dangerous or defective condition, plaintiff pointed to defendants' purchase of a new electric Zamboni just months later. As Bruckshaw explained at his deposition, electric Zambonis do not produce combustion emissions, as do those that are propane-fueled. Accordingly, plaintiff argued that he had produced competent evidence that successfully rebutted defendants' contention that there was no genuine issue of fact as to the air quality in the arena on the night in question, and thus the issue should be left to a factfinder.

With respect to the issue of prior notice of the defect, plaintiff pointed to Coach Davies' affidavit, in which he swore that he had asked a rink attendant if it would be possible to open the doors to the facility because of the smell of gas. Coach Davies also stated that he had become aware of prior similar incidents involving three other college hockey teams. In that regard, plaintiff submitted a newspaper article detailing how players from the Salve Regina University hockey team fell ill following a game against Johnson & Wales at defendants' facility on February 5, 2011.[2]

---

[2] The plaintiff later supplemented his objection to defendants' motion for summary judgment with an affidavit from the head coach of the Salve Regina hockey team. The coach attested that at least three of his players became ill following the above-referenced game, and he thereafter informed the head coach at Johnson & Wales that he thought there was a problem with the air quality in defendants' ice rink that warranted investigating. When the Salve Regina coach learned of the even "more extensive" bouts of sickness befalling the Curry College hockey team,

- 5 -

Finally, in terms of establishing a causal link between the defect and plaintiff's injury, plaintiff highlighted the impressions contained in his medical records: "[a]cute hypoxic respiratory failure caused by inhalation of toxic fumes * * * at the hockey rink" and "[a]cute onset of cough * * * caused by early chemical pneumonitis as a result of exposure to toxic irritating fumes."[3] The records listed plaintiff's discharge diagnosis as "Acute Lung Injury" and "Carbon Monoxide and Nitrous Oxide exposure[,]" and described the course of his hospital treatment as "22 [year] old male with nitrogen dioxide and carbon monoxide exposure from Zamboni machine at a hockey rink, came with cough hemoptysis."[4] Those records, according to plaintiff, were enough for his case to survive summary judgment.

A hearing on the motion was held before a justice of the Superior Court on January 19, 2016, and the motion justice rendered a bench decision the same day. He began by stating: "It appears from this record that there is a lack of evidence that a defective condition existed at the Sports Center on the date of the injury and it further appears that no one from the Sports Center had notice of any such defect, if there was one." As for the defect itself, the motion justice found that plaintiff's own testimony—that he did not see or smell any fumes in the rink, and that something else theoretically could have caused his sickness—negated his claim. The motion justice also put stock in the fact that the Department of Health's air quality test, conducted the day after the alleged exposure, came back negative for toxins, and the "more objective" evidence, as the motion justice coined it, was that the only people who fell ill were from the

___

he contacted Coach Davies and told him what had happened to players on his team just a couple of weeks earlier.

[3] The impressions also went on to state, however, that the "possibility of infectious process such as atypical pneumonia cannot be totally excluded * * *."

[4] The papers before this Court are replete with inconsistencies as to nitrous versus nitrogen and oxide versus dioxide. Because it appears to be the most common in the medical records, we have chosen to refer to the toxin as "nitrogen dioxide" throughout this opinion.

Curry College hockey team, seeming to indicate that their sickness was from another source, independent of defendants' facility.

As to the notice element, the motion justice cited the deposition testimony of both Beauregard and L'Etoile that they did not see or smell any fumes in the arena on the night in question, and that neither of them recalled receiving any complaints about air quality that night or at any other time. The motion justice expressed his view that plaintiff was relying on nothing more than "testimony that somebody saw blue smoke coming from the Zamboni, that the plaintiff obviously told the people at the emergency room that the smoke came or the fumes came from the locker room, but yet that in and of itself is not sufficient evidence * * *." As the motion justice saw it, the evidence offered by plaintiff essentially amounted to "supposition[.]" The motion justice declined to consider the newspaper article as evidence of notice because "[n]ewspaper articles are not admissible," and, he said, the affidavit from the Salve Regina coach to that effect did not necessarily result in knowledge of the problem being imparted to defendants. And finally, according to the motion justice, Coach Davies' affidavit claiming that he had asked someone at the rink to open the doors for ventilation purposes was not enough to create an issue of fact regarding whether defendants had sufficient notice. Consequently, the motion justice granted defendants' motion for summary judgment.

**II**

**Standard of Review**

When we review the granting of a party's motion for summary judgment, we do so *de novo*. *Van Hoesen v. Lloyd's of London*, 134 A.3d 178, 181 (R.I. 2016). "In doing so, we 'examin[e] the case from the vantage point of the trial justice who passed on the motion for summary judgment, * * * view[ing] the evidence in the light most favorable to the nonmoving

party * * *.'" *Id.* (quoting *Sullo v. Greenberg*, 68 A.3d 404, 406 (R.I. 2013)). We will affirm the judgment only "if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law * * *." *Id.* (quoting *Sullo*, 68 A.3d at 406-07). And, of course, we are ever mindful that "[s]ummary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." *Faber v. McVay*, 155 A.3d 153, 156 (R.I. 2017) (quoting *Cruz v. DaimlerChrysler Motors Corp.*, 66 A.3d 446, 451 (R.I. 2013)).

## III

### Discussion

The single question with which we are faced in this appeal is whether summary judgment was improperly granted. The summary-judgment procedure begins when the movant files papers seeking to establish the absence of a genuine dispute with respect to the material facts of the case. *Estate of Giuliano v. Giuliano*, 949 A.2d 386, 391 (R.I. 2008). It then becomes necessary for the nonmoving party to demonstrate by competent evidence that a disputed issue of material fact does indeed exist. *Id.* It is the court's function to look for such factual issues, but not to determine them one way or the other. *Id.*

In that light, we are tasked with examining whether there is a genuine issue of material fact that should have precluded summary judgment in this case. "In cases involving a latent defect, the plaintiff must prove that sufficient evidence existed to show that the defendants knew or should have known of an unsafe condition on their premises." *Cooley v. Kelly*, 160 A.3d 300, 304-05 (R.I. 2017) (quoting *Bromaghim v. Furney*, 808 A.2d 615, 617 (R.I. 2002)). Of course, "[t]he mere existence of [a dangerous or defective] condition * * * is not sufficient to charge [the] defendant with negligence." *Id.* at 305 (quoting *Antonakos v. Providence Institution for*

*Savings*, 94 R.I. 382, 385, 181 A.2d 101, 103 (1962)); *see also Hernandez v. Fernandez*, 697 A.2d 1101, 1103 (R.I. 1997) ("As we have long held, the mere occurrence of an accident, without more, does not warrant an inference that a defendant has been negligent."). Rather, to make out a prima facie premises liability case, the "plaintiff 'must present evidence of an unsafe condition on the premises of which the defendant was aware or should have been aware, and that the condition existed for a long enough time so the owner of the premises should have taken steps to correct the condition." *Cooley*, 160 A.3d at 305 (quoting *Bromaghim*, 808 A.2d at 617); *see also Hernandez*, 697 A.2d at 1103 ("Unless there is evidence, direct or inferential, that [the defendant] knew, or by the exercise of reasonable care in inspecting and maintaining its premises should have known, of such condition for a long enough period of time prior to the accident, it cannot be charged with notice thereof as a matter of law. Such notice is necessary to impose upon it the duty of alleviating the danger or of warning plaintiff of its existence." (quoting *Antonakos*, 94 R.I. at 385, 181 A.2d at 103)). And certainly a "causal connection between negligence and a plaintiff's injury must be established by competent evidence and may not be based on conjecture or speculation." *Cooley*, 160 A.3d at 305 (quoting *McLaughlin v. Moura*, 754 A.2d 95, 98 (R.I. 2000)). "It is also clear, however, that a plaintiff is not required to demonstrate with absolute certainty each precise step in the causal chain between the tortfeasor's breach of duty and the injury. Rather, '[c]ausation is proved by inference.'" *Skaling v. Aetna Insurance Co.*, 742 A.2d 282, 288 (R.I. 1999) (quoting *Cartier v. State*, 420 A.2d 843, 848 (R.I. 1980)).

Here, then, it was incumbent upon plaintiff to show: (1) the existence of a dangerous or defective condition on defendants' premises; (2) defendants' notice of that condition for a sufficient period of time; and (3) a causal link between that condition and plaintiff's injury. We

- 9 -

will examine these elements one by one to determine whether there was a factual dispute; only if there was not such a dispute would our function then turn to analyzing whether defendants were entitled, based on the undisputed facts, to judgment as a matter of law.

First, arguing that there was no issue of fact in terms of the defect, defendants pointed to: plaintiff's statement that he did not see or smell any fumes inside defendants' facility; plaintiff's paucity of scientific evidence that there were any airborne toxins lingering on the night in question; the notation in the ice rink log of the air quality reading that night; and the results of testing conducted by the Department of Health showing no carbon monoxide in the rink the following day. The plaintiff responded in kind. He highlighted the following evidence: the Department of Health did not conduct a test to determine the levels of nitrogen dioxide and did not perform its carbon monoxide test until a day later; affidavits from his coach and teammates swearing that they smelled gas in the air the night plaintiff was injured, that his coach witnessed the Zamboni malfunction and produce visible emissions, and that his teammates also ended up suffering very similar symptoms as he did; and that defendants purchased an electric, non-propane-fueled Zamboni just months later.[5] In our judgment, based on the competing evidence, the dangerous-or-defective-condition element is factually disputed, and the issue remains to be resolved by a finder of fact.

Second, asserting the absence of a factual dispute about whether defendants had notice of any alleged defect, defendants offered deposition statements made by two of their employees that they were unaware of any previous complaints about noxious fumes in the rink, and that they had

---

[5] Under Rhode Island law, evidence that defendants bought a new, electric Zamboni shortly after the incident involving plaintiff could have been considered by the motion justice in passing on the motion for summary judgment. *See* R.I. R. Evid. 407 ("When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is admissible.").

never observed any themselves. The plaintiff then submitted evidence in rebuttal: Coach Davies'

affidavit attesting that he had asked someone working at the rink the night of the game to open

the doors due to the gaseous smell, and that he was aware of similar incidents involving other

teams at defendants' facility; an affidavit from the coach of the Salve Regina hockey team

describing his team's experience; and a newspaper article describing that occurrence.[6] As was

the case with respect to the first element, it is our view that whether defendants had notice of the

dangerous condition at all and whether that notice was of a sufficient duration to impose on

defendants a duty to fix the danger or warn of its existence are factual issues properly left to the

determination of a jury.

Third and finally, claiming there were no disputed facts as to causation, defendants relied

on plaintiff's acknowledgement that, despite his belief that it was noxious fumes in the arena that

caused his sickness, he could not say so with 100 percent conviction. The defendants also

argued that plaintiff had no evidence that any such exposure occurred on their premises, breaking

the causal chain plaintiff needed to build. In rebuttal, plaintiff came forward with his medical

records, which contained his diagnosis and which indicated that he had presented with an injury

after inhaling toxic fumes at the ice rink. It appears from the transcript of the hearing that the

---

[6] Although the motion justice ruled that newspaper articles in general are not admissible, and he therefore did not take into account the article that plaintiff submitted, we note that he could have done so. The article was competent evidence for the purpose for which plaintiff offered it— namely, as proof of defendants' prior notice of the defective condition. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. R.I. R. Evid. 801(c). The plaintiff did not introduce the article to prove that members of the Salve Regina hockey team became ill following a game at defendants' facility; rather, he offered it to establish that defendants were or should have been aware of the problem before plaintiff was injured.

motion justice considered the medical records, but simply found them to be insufficient evidence of causation.[7]

As we have explained, "proximate cause can be established by circumstantial evidence, and specific direct evidence of * * * proximate cause is not always necessary." *Rose v. Brusini*, 149 A.3d 135, 140 (R.I. 2016) (quoting *Seide v. State*, 875 A.2d 1259, 1268 (R.I. 2005)). Thus, even putting the medical records aside, the affidavits of plaintiff's teammates and coach were proper circumstantial evidence of causation as well. In our opinion, it bears emphasizing that "[o]rdinarily the determination of proximate cause * * * is a question of fact that should not be decided by summary judgment." *Id.* (quoting *Munroe v. Cheaters Holding Corp.*, 808 A.2d 645, 646 (R.I. 2002)).

The genuine issues of material fact in this case are clear and manifest. It appears to us that the motion justice impermissibly weighed the evidence in resolving those factual disputes— a function unquestionably reserved to the province of the jury. *See Limoges v. Nalco Company*, 157 A.3d 567, 571 (R.I. 2017); *Williams v. Alston*, 154 A.3d 456, 460 (R.I. 2017). As this Court previously has observed, "[t]he purpose of the summary-judgment procedure is to identify disputed issues of fact necessitating trial, not to resolve such issues." *Plainfield Pike Gas & Convenience, LLC v. 1889 Plainfield Pike Realty Corp.*, 994 A.2d 54, 58 (R.I. 2010) (quoting *Rotelli v. Catanzaro*, 686 A.2d 91, 93 (R.I. 1996)). We have also cautioned that "issues of negligence are ordinarily not susceptible of summary adjudication, but should be resolved by

---

[7] We agree that this evidence could have been considered, including those parts of the medical records that made reference to the ice rink. *See* R.I. R. Evid. 803(4) ("Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, but not including statements made to a physician consulted solely for the purposes of preparing for litigation or obtaining testimony for trial.").

- 12 -

trial in the ordinary manner." *DeMaio v. Ciccone*, 59 A.3d 125, 130 (R.I. 2013) (quoting *Gliottone v. Ethier*, 870 A.2d 1022, 1028 (R.I. 2005)); *see also DeNardo v. Fairmount Foundries Cranston, Inc.*, 121 R.I. 440, 448, 399 A.2d 1229, 1234 (1979) ("In Rhode Island the general rule is that negligence is a question for the jury unless the facts warrant only one conclusion."). In our considered opinion, the issues of fact inherent in this case necessitated a trial; there was not only one possible conclusion. Accordingly, the defendants' alleged negligence was a question that should have been left for the jury, and it was error to dispose of the case by summary judgment.

## IV

## Conclusion

For the reasons stated above, we vacate the judgment of the Superior Court. The record shall be remanded to the Superior Court.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Ian Delong v. Rhode Island Sports Center, Inc., et al. |
| **Case Number** | No. 2017-91-Appeal.<br>(PC 14-611) |
| **Date Opinion Filed** | May 8, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Francis X. Flaherty |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Mark B. Morse, Esq.<br><br>For Defendants:<br><br>Charles F. Gfeller, Pro Hac Vice<br>Stephen Adams, Esq.<br>Jenna Rae Pingitore, Esq. |