January 17, 2019

**Supreme Court**

No. 2017-175-Appeal.

(WC 15-512)

Hexagon Holdings, Inc.          :

v.          :

Carlisle Syntec Incorporated et al.          :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court
No. 2017-175-Appeal.
(WC 15-512)

Dissent begins on Page 13

Hexagon Holdings, Inc.        :

v.        :

Carlisle Syntec Incorporated et al.        :

Present:  Suttell, C.J., Flaherty, Robinson, and Indeglia, JJ.

### O P I N I O N

**Justice Indeglia, for the Court.**  The plaintiff, Hexagon Holdings, Inc. (Hexagon), appeals from the grant of summary judgment in favor of defendant McKenna Roofing and Construction, Inc. (McKenna).  This matter originally appeared before the Court on an order to show cause why the issues in the case should not be summarily decided.  In an order dated March 5, 2018, the Court returned the case to the regular calendar for full argument. *Hexagon Holdings, Inc. v. Carlisle Syntec Incorporated*, 179 A.3d 146, 147 (R.I. 2018) (mem.).  In doing so, we "specifically direct[ed] the parties to brief the third-party intended beneficiary issue among such other issues that they consider germane to decide the issue before this Court." *Id.* The parties appeared before the Court on October 3, 2018, for oral argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

### I

### Facts and Travel

The pertinent facts are as follows.  In 2006, Hexagon entered into a contract with A/Z Corporation to construct a new facility at the Quonset Business Park, located in North

- 1 -

Kingstown, Rhode Island. As general contractor, A/Z Corporation subcontracted the roofing installation to McKenna, authorizing McKenna to install a specific roofing system manufactured by defendant Carlisle Syntec Incorporated (Carlisle). Hexagon alleges that, almost immediately, the new roof began to leak.

On October 14, 2015, approximately nine years after first contracting with A/Z Corporation, Hexagon filed a complaint in Washington County Superior Court against Carlisle and McKenna, alleging breach of contract as to both defendants (Count I); breach of express warranty as to Carlisle only (Count II); and breach of the implied warranty to construct in good and workmanlike manner (Count III), misrepresentation (Count IV),[1] and negligence (Count V), against both defendants.[2] Hexagon alleged that McKenna had improperly installed the roof and sought to recover the cost of replacing it. Hexagon did not assert claims against A/Z Corporation, the general contractor, for reasons Hexagon later described as "judicial efficiency and not choosing to damage a relationship with somebody that [it] had a positive relationship with * * *." McKenna moved for summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure and provided the following as the undisputed statement of facts:

> "The plaintiff entered into a contract with A/Z Construction [*sic*] to act as a general contractor for the construction of its building located at 250 Circuit Drive, North Kingstown, RI in 2006. * * * Plaintiff alleges that Carlisle supplied a 'Carlisle Golden Seal Total Roofing System' to the building. * * * Plaintiff's Complaint further alleges that Carlisle supplied it with a written warranty concerning the roofing system dated July 15, 2006. * * * McKenna was a subcontractor on the project, and installed the Carlisle roofing system.
> "Plaintiff alleges that the roofing system failed. * * * Specifically, the plaintiff claims that the roof began leaking in

---

[1] McKenna filed a motion to dismiss the misrepresentation claim pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure. The motion justice granted the motion and dismissed that claim, without prejudice, and it is not part of this appeal.

[2] The claims against Carlisle are not at issue in this appeal.

2006. * * * The plaintiff further alleges that the leaks are due to defects in materials and/or installation."

In its memorandum in support of its motion, McKenna argued that Hexagon did not allege viable claims for breach of contract and breach of implied warranty against McKenna because no contract existed between the parties. McKenna further argued that Hexagon failed to specifically plead that Hexagon was an intended beneficiary of the subcontract between McKenna and A/Z Corporation, as required by Rule 8 of the Superior Court Rules of Civil Procedure. In addition, McKenna argued that the economic loss doctrine barred Hexagon from recovering economic damages on the negligence claim in Count V of its complaint.

In its opposition to McKenna's motion for summary judgment, Hexagon accepted McKenna's undisputed facts in their entirety, and countered that its claims against McKenna for breach of contract and breach of implied warranty were sustainable because third-party intended beneficiaries can maintain a breach-of-contract claim even in the absence of a contract between a plaintiff and a defendant. Hexagon added that this theory did not need to be specifically pled and that, for summary-judgment purposes, it had provided sufficient proof of this third-party intended beneficiary theory by accepting the undisputed facts offered by McKenna. In this regard, we note that Hexagon failed to submit either the general contract between Hexagon and A/Z Corporation or the subcontract between McKenna and A/Z Corporation in its opposition to the motion. Addressing its negligence claim, Hexagon argued that the economic loss doctrine, which bars recovery for pure economic loss in a negligence action, does not apply to this case because no privity of contract existed between Hexagon and McKenna.

The hearing on McKenna's motion for summary judgment was held on November 21, 2016. The motion justice granted the motion, holding that Hexagon was only an incidental beneficiary, as opposed to an intended beneficiary, of the subcontract between McKenna and

- 3 -

A/Z Corporation. The court reasoned that Hexagon had failed to show that it was directly and unequivocally an intended beneficiary. He held that the economic loss doctrine applied, barring Hexagon's claim for pure economic loss, because the parties were engaged in a commercial transaction. An order granting McKenna's motion for summary judgment was entered on December 6, 2016. On December 19, 2016, Hexagon prematurely appealed to this Court.[3] Final judgment was entered on December 27, 2016, in favor of McKenna on all counts of Hexagon's complaint, pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure.

## II

### Standard of Review

A motion for summary judgment "is designed to decide in an expeditious fashion cases presenting groundless claims * * *." *Gallo v. National Nursing Homes, Inc.*, 106 R.I. 485, 487, 261 A.2d 19, 21 (1970). When we review a hearing justice's grant of a motion for summary judgment, we conduct our analysis *de novo. Jessup & Conroy, P.C. v. Seguin*, 46 A.3d 835, 838 (R.I. 2012). If we determine that "there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law[,]" then we will affirm the grant of the motion. *Sisto v. America Condominium Association, Inc.*, 68 A.3d 603, 611 (R.I. 2013) (quoting *Zanni v. Voccola*, 13 A.3d 1068, 1071 (R.I. 2011)). In this endeavor, "[w]e view the evidence in the light most favorable to the nonmoving party." *Narragansett Indian Tribe v. State*, 81 A.3d 1106, 1109 (R.I. 2014). However, once the moving party establishes "the absence of a material factual issue, the party opposing the motion has an affirmative duty to establish either by affidavit or by other means the material issue of fact to be decided." *Grissom v. Pawtucket Trust Co.*, 559 A.2d 1065,

---

[3] "[T]his Court will treat [a] premature appeal as if it had been timely filed." *Terzian v. Lombardi*, 180 A.3d 555, 557 n.4 (R.I. 2018).

1066 (R.I. 1989). The party opposing the motion cannot establish a genuine issue of fact merely by resting on denials in its pleadings. *Volino v. General Dynamics*, 539 A.2d 531, 533 (R.I. 1988). Rather, the opposing party must "respond with specific facts that would constitute a genuine issue for trial." *Id.*

In cases where a party seeks summary judgment on a negligence claim, "[t]he motion justice may treat the issue of negligence as a matter of law only if the facts suggest only one reasonable inference." *Berard v. HCP, Inc.*, 64 A.3d 1215, 1218 (R.I. 2013) (quoting *DeMaio v. Ciccone*, 59 A.3d 125, 130 (R.I. 2013)).

## III

## Discussion

## A

## Contract Claims

Hexagon contends that the hearing justice erred in granting summary judgment with respect to Counts I and III of its complaint, which allege breach of contract and breach of implied warranties. The thrust of Hexagon's argument is that, armed with McKenna's undisputed statement of facts, a reasonable jury could find that McKenna owed a contractual duty to Hexagon as a third-party beneficiary to the subcontract between A/Z Corporation and McKenna. We are therefore called upon to determine whether the owner of a building may survive summary judgment based on a third-party-beneficiary theory where the only evidence presented was that the subcontractor may have had knowledge of the identity of the property owner, who was the ultimate beneficiary of the work that was performed.

We deal first with McKenna's argument that Hexagon's third-party beneficiary assertion is not properly before this Court because it was not specifically pled. Rule 8(a) requires a

complaint to contain: "(1) A short and plain statement of the claim showing that the pleader is entitled to relief; and (2) A demand for judgment for the relief the pleader seeks."  A viable complaint must "give the opposing party fair and adequate notice of the type of claim being asserted[,]" even if it does not plead the ultimate facts or precise legal theory upon which the claim is based. *Berard v. Ryder Student Transportation Services, Inc.*, 767 A.2d 81, 83-84 (R.I. 2001) (quoting *Haley v. Town of Lincoln*, 611 A.2d 845, 848 (R.I. 1992)).  Here, even though Hexagon did not specifically reference the subcontract between A/Z Corporation and McKenna in its complaint, McKenna was on notice that Hexagon was bringing a claim for breach of contract with respect to this same transaction, even though the ultimate facts upon which Hexagon now relies are different from those set out in its complaint.

Further, "[i]t is well settled that '[w]hen one party for valuable consideration, engages another by contract to do some act for the benefit of a third party, the latter who would enjoy the benefits, may maintain an action for breach of contract.'" *Glassie v. Doucette*, 157 A.3d 1092, 1097 (R.I. 2017) (quoting *Davis v. New England Pest Control Co.*, 576 A.2d 1240, 1242 (R.I. 1990)).  "If the third party is an intended beneficiary, the law implies privity of contract." *Davis*, 576 A.2d at 1242.  That is to say, if Hexagon were an intended beneficiary of the subcontract between A/Z Corporation and McKenna, Hexagon could maintain a breach-of-contract cause of action against McKenna.  Therefore, the issue of Hexagon's claim for breach of contract as a third-party beneficiary of the subcontract between A/Z Corporation and McKenna is properly before this Court.

Having decided that Hexagon's third-party beneficiary assertions are properly before us, we turn now to the question of whether its claims for breach of contract and breach of implied warranty may survive McKenna's motion for summary judgment.  "In order to prevail on a

contract claim as a third-party beneficiary, the claimant must prove that he or she is an *intended* beneficiary of the contract." *Glassie*, 157 A.3d at 1097 (emphasis added). "An intended beneficiary of a contract 'stands in the shoes' of the promisee." *Id.* (quoting *Cathay Cathay, Inc. v. Vindalu, LLC*, 962 A.2d 740, 746 (R.I. 2009)). Rhode Island courts follow the Restatement (Second) *Contracts* § 302 (1981) for guidance in distinguishing between intended and incidental beneficiaries of a contract. *See Glassie*, 157 A.3d at 1097; *Cathay Cathay, Inc.*, 962 A.2d at 745, 746. This section reads:

> "(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>> "(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>> "(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
> "(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary."

Both parties cite the Restatement (Second) *Contracts* § 302 at cmt. *e.*, illustration 19 (1981), to justify their respective positions. This illustration provides: "A contracts to erect a building for C. B then contracts with A to supply lumber needed for the building. C is an incidental beneficiary of B's promise, and B is an incidental beneficiary of C's promise to pay A for the building." In such a situation, the owner (C) is an incidental beneficiary of the contract between the general contractor (A) and the subcontractor (B). Incidental beneficiaries are not entitled to bring a claim for breach of contract under the third-party beneficiary doctrine. *See Glassie*, 157 A.3d at 1097; Restatement (Second) *Contracts* § 302(2). However, according to the Restatement (Second) *Contracts* § 302(1)(b), where a subcontractor provides more than mere materials, the owner's status will change from incidental to intended beneficiary of the

subcontract, if "the circumstances indicate that [the subcontractor] intends to give [the owner] the benefit of the promised performance."

As we have stated, "[t]he language employed by the parties to a contract is the best expression of their contractual intent, and when that language is 'clear and unambiguous, words contained therein will be given their usual and ordinary meaning and the parties will be bound by such meaning.'" *Cathay Cathay, Inc.*, 962 A.2d at 746 (quoting *Singer v. Singer*, 692 A.2d 691, 692 (R.I. 1997) (mem.)). Here, Hexagon has submitted neither the subcontract between A/Z Corporation and McKenna nor the general contract between Hexagon and A/Z Corporation into evidence; neither has it provided any evidence in the form of affidavits, interrogatories, or depositions to prove that the intent of A/Z Corporation and McKenna was to directly benefit Hexagon. While Hexagon proffers that this intent did exist, its only support lies in conjecture. Viewing the evidence in the light most favorable to Hexagon, as we must, its only evidence— from the undisputed facts supplied by McKenna—is that McKenna *may* have known that Hexagon owned the building. This alone does not create an issue of material fact as to McKenna's intent under the circumstances to benefit Hexagon apart from its own contract with A/Z Corporation. *See* Restatement (Second) *Contracts* § 302(1)(b).

Hexagon relies on two opinions by this Court in support of its position. In the first, *Davis*, we allowed a subsequent purchaser to claim breach of contract as a third-party beneficiary of a termite-inspection contract. *Davis*, 576 A.2d at 1242. Ruling on "the granting of a motion for a directed verdict" below, "the trial justice found there was evidence on which a jury could say that there was a contractual obligation between [the defendant] and the [plaintiffs]." *Id.* On appeal, this Court cited to "a substantial body of case law that holds that a pest-exterminating company is liable to a plaintiff who purchases property in reliance upon a false or inaccurate

wood-infestation report provided to the vendor." *Id.* Thus, in that case, privity of contract was created by a clear duty on the part of the inspector to the subsequent purchaser. *See id.*

In *Credit Union Central Falls v. Groff*, 966 A.2d 1262 (R.I. 2009), we recognized "that the liability of an attorney may extend to third-party beneficiaries of the attorney-client relationship if it is clear that the contracting parties intended to benefit the third party." *Groff*, 966 A.2d at 1272. We then quoted an opinion of the Minnesota Supreme Court in holding that intended beneficiary status may be found where the "central purpose[,]" the "end and aim[,]" and the "heart of the contract" at issue were to benefit the third party. *Id.* at 127 (quoting *McIntosh County Bank v. Dorsey & Whitney, LLP*, 745 N.W.2d 538, 547 (Minn. 2008)). On appeal, we affirmed a trial court's grant of summary judgment in favor of the plaintiff because, under the circumstances, it was clear "that the legal services rendered by [the defendant] on behalf of his borrower-clients were done for the *direct purpose* of" benefiting the plaintiff lending institution. *Id.* at 1274 (emphasis added). Under the circumstances, the attorney-defendant clearly knew that the "central purpose" of the work he performed was for the benefit of the third-party lending institution, and, therefore, a contractual duty existed between the two. *Id.*

In both *Davis* and *Groff*, it was clear, under the particular circumstances of each case, that the contracting party (the inspection company and the lawyer, respectively) intended to directly benefit the third party (the subsequent purchaser and the lending institution, respectively). However, in the instant case, it is difficult for us to discern the intent of the parties, due to the limited record; we do not know the "central purpose" of the subcontract between A/Z Corporation and McKenna, because that contract is not before us. Furthermore, we know little about other circumstances surrounding the contract between A/Z Corporation and McKenna; we

certainly do not know enough to find a genuine issue of *material* fact about McKenna's intent to benefit Hexagon.

The motion justice granted McKenna's motion for summary judgment on the basis that Hexagon was "an incidental beneficiary as opposed to intended beneficiary." Looking to the Restatement, he went on to state that, under the circumstances, it "must be clear that the owner of the property was directly and unequivocally the intended benefi[ciary]. So that's not the case here." We agree that this is a correct statement of law and that the motion justice appropriately granted summary judgment in favor of McKenna on Hexagon's claims of breach of contract and breach of implied warranties. *See Groff*, 966 A.2d at 1274. Although we have stated that "[s]ummary judgment is an extreme remedy that should be applied cautiously[,]" *Hill v. National Grid*, 11 A.3d 110, 113 (R.I. 2011) (quoting *Plainfield Pike Gas & Convenience, LLC v. 1889 Plainfield Pike Realty Corp.*, 994 A.2d 54, 57 (R.I. 2010)), "[a] party who opposes summary judgment has a duty to establish that a genuine issue of material fact exists and may not rest solely upon allegations and denials in the pleadings." *Urena v. Theta Products, Inc.*, 899 A.2d 449, 452 (R.I. 2006). We are wary of allowing a party opposing a motion for summary judgment to point only to the moving party's submissions, without providing anything of its own.

It is clear from our review of the record that Hexagon failed to include any discovery from McKenna in its opposition to McKenna's motion for summary judgment. Furthermore, Hexagon has put forth no evidence, save for a suggestion—supplied by McKenna—that McKenna knew that it was performing work on Hexagon's building. We are left with a sparse record containing no indication that, at the time A/Z Corporation and McKenna entered into the subcontract, there was a specific intent to benefit Hexagon. As such, we affirm the motion justice's grant of summary judgment with respect to Counts I and III of Hexagon's complaint.

**B**

**Negligence Claim**

Next, Hexagon argues that the hearing justice erred in granting summary judgment with respect to Count V, alleging negligence against McKenna. Hexagon avers that, if there were a lack of contractual privity between Hexagon and McKenna, the economic loss doctrine would not bar recovery for purely economic loss due to negligence, even in a commercial transaction. The issue here is whether an owner of a commercial building may circumvent contractual privity with a general contractor by suing the subcontractor to evade application of the economic loss doctrine. We answer this question in the negative.

"The economic loss doctrine provides that 'a plaintiff is precluded from recovering purely economic losses in a negligence cause of action.'" *Franklin Grove Corp. v. Drexel*, 936 A.2d 1272, 1275 (R.I. 2007) (quoting *Boston Investment Property # 1 State v. E.W. Burman, Inc.*, 658 A.2d 515, 517 (R.I. 1995)). "In other words, under this doctrine, a plaintiff may not recover damages under a negligence claim when the plaintiff has suffered no personal injury or property damage." *Id.* Where there are damages in the construction context between commercial entities, the economic loss doctrine will bar any tort claims for "purely economic damages." *Id.* (quoting *E.W. Burman, Inc.*, 658 A.2d at 517). In such a context, a party who is injured must resort to contract law for recovery. *Id.*

Hexagon asserts that a lack of privity in a transaction between commercial entities is sufficient to bar application of the economic loss doctrine. In *E.W. Burman, Inc.*, we were called to answer the following certified question from the United States District Court for the District of Rhode Island: "In the absence of privity of contract with the general contractor, is the subsequent purchaser of a commercial office building in Rhode Island entitled to recover economic damages

which it is alleged were proximately caused by the negligence of the general contractor?" *E.W. Burman, Inc.*, 658 A.2d at 515. We answered this question in the negative, stating that it was "important to note that the parties involved in the matter before us are commercial entities. This is not a situation in which there is a discrepancy in the bargaining powers of the parties." *Id.* at 517. We therefore held that "[a]n extension of tort liability for economic damages to subsequent purchasers of commercial property is unwarranted. In the case of sophisticated commercial entities in the commercial real estate market, contract law is the proper device to allocate economic risk." *Id.* at 518.

In both *Drexel* and *E.W. Burman, Inc.*, we expressed our agreement with the Supreme Court of New Jersey's decision in *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 489 A.2d 660 (N.J. 1985), that:

> "[t]he purpose of a tort duty of care is to protect society's interest in freedom from harm, i.e., the duty arises from policy considerations formed without reference to any agreement between the parties. A contractual duty, by comparison, arises from society's interest in the performance of promises. Generally speaking, tort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident. *Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement.*" *E.W. Burman, Inc.*, 658 A.2d at 517-18 (emphasis in original) (quoting *Spring Motors Distributors, Inc.*, 489 A.2d at 672); *see also Drexel*, 936 A.2d at 1275-76.

This rationale is no less applicable here. The motion justice granted summary judgment for McKenna, holding that, "[i]n a case such as this, it is a commercial transaction, it's appropriate for * * * commercial entities to utilize contract law to protect themselves from economic damages." We agree that this is a correct statement of the law and that summary judgment was appropriately granted in favor of McKenna. Clearly, the economic loss doctrine

- 12 -

would bar Hexagon, a commercial entity, from bringing a negligence claim against the general contractor, A/Z Corporation, with which it was in privity of contract. *See Drexel*, 936 A.2d at 1275-76; *E.W. Burman, Inc.*, 658 A.2d at 517-18. At least in this setting, where Hexagon deliberately avoided suing the general contractor, A/Z Corporation, Hexagon is barred from asserting a lack of privity with McKenna to avoid application of the economic loss doctrine. As such, summary judgment was appropriate as to Hexagon's claim for negligence against McKenna.

## IV

### Conclusion

For the reasons stated herein, we affirm the judgment in favor of McKenna on Counts I, III, and V of Hexagon's complaint, and remand the papers to the Superior Court.

Justice Goldberg did not participate.

**Justice Robinson, dissenting.** I respectfully, but vigorously dissent. While I readily acknowledge that the Court's opinion is well-written and thought-provoking, I nevertheless am not persuaded that summary judgment in favor of McKenna Roofing & Construction, Inc. (McKenna) was properly granted.[1] While at first glance the majority's logic may seem to many to be unassailable, I am convinced, after reviewing the pleadings, answers to interrogatories, and "other appropriate evidence," that there is indeed a genuine issue of material fact with respect to

---

[1] Although the motion at issue was labeled a "Motion to Dismiss," the fact is that it explicitly invokes Rule 56 as well as Rule 12 of the Superior Court Rules of Civil Procedure. The parties and the trial justice treated that dispositive motion as a motion for summary judgment.

whether Hexagon Holdings, Inc. (Hexagon) was an intended third-party beneficiary of the contract providing for McKenna's roof installation.[2] *Faella v. Chiodo*, 111 A.3d 351, 356 (R.I. 2015) (noting that, when dealing with a motion for summary judgment, the "hearing justice must review the pleadings, affidavits, admissions, answers to interrogatories, and other appropriate evidence") (internal quotation marks omitted); *see also Williams v. Alston*, 154 A.3d 456, 460 (R.I. 2017); *Plainfield Pike Gas & Convenience, LLC v. 1889 Plainfield Pike Realty Corp.*, 994 A.2d 54, 57 (R.I. 2010).

This Court has repeatedly emphasized that summary judgment is a "drastic remedy" which must be applied cautiously. *DeLong v. Rhode Island Sports Center, Inc.*, 182 A.3d 1129, 1134 (R.I. 2018) ("[W]e are ever mindful that summary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously.") (internal quotation marks omitted); *see Employers Mutual Casualty Co. v. Arbella Protection Insurance Co.*, 24 A.3d 544, 553 (R.I. 2011); *Estate of Giuliano v. Giuliano*, 949 A.2d 386, 390 (R.I. 2008); *Canavan v. Lovett, Schefrin and Harnett*, 862 A.2d 778, 783 (R.I. 2004). As this Court has so frequently noted, the purpose of summary judgment is not to determine which party would prevail at trial, but whether there is a triable issue of fact. *Estate of Giuliano*, 949 A.2d at 391 ("[T]he purpose of the summary judgment procedure is issue finding, not issue determination.") (internal quotation marks omitted). It is also a well-established principle that "[a] hearing justice who passes on a motion for summary judgment must review the pleadings, affidavits, admissions, answers to interrogatories, and other appropriate evidence from a perspective most favorable to

---

[2]     As for McKenna's threshold argument that Hexagon's third-party beneficiary contention is not properly before this Court, I unreservedly agree with the majority's conclusion that "Hexagon's third-party beneficiary assertions are properly before us * * *." And I agree with the rationale articulated by the majority in reaching that conclusion.

the party opposing the motion." *Id.* (internal quotation marks omitted); *see also Walsh v. Lend Lease (US) Construction*, 155 A.3d 1201, 1204 (R.I. 2017).

It is true that we have held that "[a] party who opposes summary judgment has a duty to establish that a genuine issue of material fact exists and may not rest solely upon allegations and denials in the pleadings." *Urena v. Theta Products, Inc.*, 899 A.2d 449, 452 (R.I. 2006). However, in the instant case, it is clear beyond cavil that, in opposing McKenna's motion for summary judgment, Hexagon most definitely did not "rest solely upon allegations and denials in the pleadings." *Id.* Instead, Hexagon relied upon evidence in the record that I believe should have been fatal to McKenna's attempt to summarily dispose of this case through the "drastic remedy" of summary judgment. *DeLong*, 182 A.3d at 1134.

The majority's opinion correctly comments that the terms of an express contract would usually be the easiest guide to resolving the intended beneficiary (*vel non*) issue. And it is true that no such express contract had been presented to the hearing justice when he passed upon McKenna's motion for summary judgment. Indeed, the majority assigns great weight to the fact that Hexagon did not submit either the general contract between A/Z Corporation and Hexagon or the subcontract between A/Z Corporation and McKenna. However, in my opinion, the absence of such an express contract in this case did not make the grant of summary judgment in McKenna's favor inevitable as a legal matter.[3]

The majority opines that Hexagon did not meet its burden to demonstrate the existence of a genuine issue of material fact since Hexagon instead relied solely on McKenna's explicit and

---

[3]     With genuine respect, I am inclined to think that the majority's reliance on the absence from the record of an express contract is, upon close scrutiny, not persuasive. Suppose that A/Z Corporation had gone out of business and all copies of its contract with McKenna had been destroyed. Would McKenna in that hypothetical scenario somehow have been *ipso facto* immunized from potential liability under a third-party beneficiary theory? I think not.

- 15 -

unequivocal statement of undisputed facts, without introducing any evidence of its own. However, there is no legal requirement that Hexagon had to introduce its own evidence in order to survive McKenna's motion for summary judgment. *See, e.g.*, *Nichola v. John Hancock Mutual Life Insurance Co.*, 471 A.2d 945, 948 (R.I. 1984) ("There is no absolute requirement under Rule 56 that the nonmoving party submit an affidavit opposing a motion for summary judgment."); *Steinberg v. State*, 427 A.2d 338, 340 (R.I. 1981).

Even without an express contract having been presented to the hearing justice, Hexagon had pointed to enough evidence to establish the existence of a genuine issue of material fact— namely: (1) McKenna's answer to Hexagon's complaint; and (2) the statement of undisputed facts.

In McKenna's answer to Hexagon's complaint, McKenna did not contest the allegations in paragraph seven of that complaint; rather McKenna expressly admitted that "it installed a roof on a building located at 250 Circuit Avenue, [North Kingstown,] Rhode Island."

Then, after the pleadings were closed, initial discovery resulted in a statement of undisputed facts that McKenna submitted in support of its dispositive motion at issue in this case and which Hexagon accepted in its opposition to the motion. While the statement of undisputed facts is set forth verbatim in the majority's opinion, it bears repeating:

> "The plaintiff entered into a contract with A/Z Construction [*sic*] to act as a general contractor for the construction of its building located at 250 Circuit Drive, North Kingstown, RI in 2006. * * * Plaintiff alleges that Carlisle supplied a 'Carlisle Golden Seal Total Roofing System' to the building. * * * Plaintiff's Complaint further alleges that Carlisle supplied it with a written warranty concerning the roofing system dated July 15, 2006. * * * McKenna was a subcontractor on the project, and installed the Carlisle roofing system.
> "Plaintiff alleges that the roofing system failed. * * * Specifically, the plaintiff claims that the roof began

leaking in 2006. * * * The plaintiff further alleges that the leaks are due to defects in materials and/or installation."

After reviewing the just-referenced "appropriate evidence" that was before the hearing justice, it was completely clear that McKenna installed the roof on Hexagon's building. *Estate of Giuliano*, 949 A.2d at 391.[4] This makes the facts in the instant case radically dissimilar from those summarized in the illustration provided in the Restatement (Second) of *Contracts* (relied on by the majority) regarding a supplier of materials which was unaware of the final destination of its materials. Restatement (Second) *Contracts* § 302 cmt. *e*., illustration 19 at 444 (1981). The majority opinion even acknowledges that "according to the Restatement (Second) *Contracts* § 302(1)(b), where a subcontractor provides more than mere materials, the owner's status will change from incidental to intended beneficiary of the subcontract, if the circumstances indicate that [the subcontractor] intends to give [the owner] the benefit of the promised performance." (Internal quotation marks omitted.) Here, McKenna did much more than merely provide materials because McKenna actually installed the roof directly on the building itself. Accordingly, it is my position that, even without any express contract being in evidence, Hexagon has more than adequately shown that a genuine issue of material fact exists as to whether or not McKenna intended to benefit Hexagon.

Even if I concede *arguendo* that, at this stage of the litigation, it is not unequivocally clear whether Hexagon is a third-party beneficiary, it is nonetheless obvious to me that, in view

---

[4]     I feel that it is advisable to reiterate that this Court has expressly "indicated that [a] hearing justice who passes on a motion for summary judgment must review the pleadings, affidavits, admissions, answers to interrogatories, and other appropriate evidence from a perspective most favorable to the party opposing the motion." *DeMarco v. Travelers Insurance Co.*, 26 A.3d 585, 605 (R.I. 2011) (internal quotation marks omitted). Even if one were to disregard McKenna's explicit answer to paragraph seven of Hexagon's complaint, the statement of undisputed facts certainly constitutes "appropriate evidence" that I contend should have been fatal to the grant of summary judgment in McKenna's favor. *Id.*

of the evidence in the record to which Hexagon directed the Court's attention, that issue should not have been resolved by the hearing justice in the context of a motion for summary judgment. *See Industrial National Bank v. Peloso*, 121 R.I. 305, 307-08, 397 A.2d 1312, 1313 (1979); *see also Estate of Giuliano*, 949 A.2d at 394 n.9 ("The *weight* of the evidence should not be evaluated at the summary judgment stage.") (emphasis in original); *Mitchell v. Mitchell*, 756 A.2d 179, 185 (R.I. 2000) (stating that the purpose of summary judgment "is not to cull out the weak cases from the herd of lawsuits waiting to be tried" and further stating that "only if the case is legally dead on arrival should the court take the drastic step of * * * granting summary judgment"). Where there is enough evidence to warrant reasonable factfinders reaching differing conclusions, questions of fact must necessarily be left for the resolution by the ultimate factfinder. *Williams*, 154 A.3d at 460 (vacating summary judgment where "the facts suggest more than one reasonable inference"). There is enough evidence here (notably, McKenna's answer to Hexagon's complaint and the statement of undisputed facts) to suggest that a jury could find that there was a third-party contractual obligation between Hexagon and McKenna. *See Davis v. New England Pest Control Co.*, 576 A.2d 1240, 1242 (R.I. 1990) ("When one party for valuable consideration, engages another by contract to do some act for the benefit of a third party, the latter who would enjoy the benefits, may maintain an action for breach of contract."). Rather than prematurely terminate this litigation at the summary judgment stage, my understanding of our Rule 56 jurisprudence convinces me that it was requisite for the case to proceed to trial to determine if Hexagon was indeed an intended third-party beneficiary of McKenna's contractual performance.

Accordingly, for the above-stated reasons, I respectfully, but most vigorously, record my dissent.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Hexagon Holdings, Inc. v. Carlisle Syntec Incorporated et al. |
| **Case Number** | No. 2017-175-Appeal. (WC 15-512) |
| **Date Opinion Filed** | January 17, 2019 |
| **Justices** | Suttell, C.J., Flaherty, Robinson, and Indeglia JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Bennet R. Gallo |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Joel K. Goloskie, Esq.<br>William E. O'Gara, Esq. |
| | For Defendant:<br><br>John Caletri, Esq.<br>Gerald C. DeMaria, Esq.<br>Kristina Hultman, Esq.<br>Alex A. Romano, Esq. |