Alison E. Glassie et al.                    :

                    v.                       :

Paul Doucette, in his capacity as Executor   :
 of the Estate of Donelson C. Glassie, Jr.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Alison E. Glassie et al.       :

v.              :

Paul Doucette, in his capacity as Executor   :
  of the Estate of Donelson C. Glassie, Jr.

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.** This appeal came before the Supreme Court on February 10, 2017, and requires the Court to determine whether the law of contracts or the law of trusts governs the resolution of this dispute. An allegedly underfunded trust that was created by the decedent, Donelson C. Glassie, Jr. (Donelson), for the benefit of his daughter, the late Jacquelin Caffrey Glassie (Jacquelin),[1] in accordance with a property settlement agreement between her divorcing parents, Donelson and Jacquelin's mother, Marcia Sallum Glassie (Marcia), is the genesis of this dispute.

The plaintiff, Alison E. Glassie (plaintiff or Alison), Executrix of the Estate of Jacquelin Caffrey Glassie, appeals from a grant of summary judgment in favor of defendant, Paul Doucette, in his capacity as Executor of the Estate of Donelson C. Glassie, Jr. (defendant) on plaintiff's breach of contract claim. The Superior Court justice applied the law of trusts and declared that plaintiff lacked standing to sue the estate because, except in limited circumstances, only a trustee may institute an action on behalf of the beneficiaries of a trust. Before this Court,

---

[1] Jacquelin unexpectedly passed away on November 15, 2012, while this case was pending in Superior Court.

plaintiff argues that the trust created for Jacquelin's benefit is not the basis of this suit and that her standing to sue arises from her status as a third-party beneficiary to the property settlement agreement entered into by her divorcing parents. For the reasons discussed herein, we affirm the judgment of the Superior Court.

**Facts and Travel**

This case is but one chapter[2] in what is a complicated, multistate continuing saga over the decedent's estate, arising in the context of a legacy of wealth. On February 14, 1986, Donelson and Marcia were married; they had three children, Alison, Georgia, and the youngest, Jacquelin, the subject of this dispute. Prior to Jacquelin's birth, Donelson's mother, Sara Madison Eccles, created two trusts, with a principal of $100,000 each, for the benefit of Jacquelin's older sisters, Alison and Georgia. Donelson and Marcia eventually ended their marriage and entered into a property settlement agreement on July 1, 1993. Article SEVENTEENTH provided as follows:

> "Whereas there is presently in existence two Trusts for the benefit of the minor child, Alison and the minor child, Georgia. Said Trusts are in the principal amount of $100,000. Therefore, the Husband agrees to create a similar trust within 45 days for the minor child, Jacquelin. He shall pay into said Trust the sum of $10,000 each and every year until said Trust is equal to the amount of the Trusts for Alison and Georgia. Said Trust shall be used to pay for the college and higher education of the minor child, Jacquelin."

On August 11, 1993, Donelson established the Jacquelin Caffrey Glassie Trust II (the Trust). Section 3.1 of the Trust states that the declared purpose of the Trust was "to provide benefits for the primary beneficiary through a trust providing benefits substantially similar to

---

[2] A related case concerning Donelson's estate is additionally pending before us. The defendant has appealed a grant of summary judgment entered in favor of Jacquelin's mother, declaring that Marcia was entitled to additional monies under Donelson's Last Will and Testament, in accordance with the property settlement agreement. Glassie v. Doucette, No. 2015-276-A., No. 2015-277-A.

those provided for Alison Glassie and Georgia Glassie by trusts created by Trustor's mother, Sara Madison Eccles, on August 30, 1989 * * *." Section 2.7 of the Trust indicates that the Trust would terminate "upon the death of the primary beneficiary." In the event that Jacquelin, the primary beneficiary, failed to exercise a power of appointment, the Trust was to be distributed in equal shares to Jacquelin's living issue, or in the case of no living issue, in equal shares to Donelson's living issue, "with the Trustee of any trust created by Trustor's mother * * * for the benefit of such issue similar to this trust receiving the share for such issue * * *." Id. at 2.7(b). Notably missing from the Trust language is any provision that indicates that the Trust was created pursuant to the property settlement agreement, or that Donelson was required to contribute $10,000 a year until the Trust was "equal to the amount of the Trusts for Alison and Georgia." The record discloses that Donelson conveyed property to the trustee of the Trust, First Security Bank of Utah, National Association,[3] in accordance with Schedule A, a document which has not been produced. According to an affidavit of the Executor, Donelson made two cash contributions of $10,000, and all other contributions were transfers of equity securities.

On February 3, 2011, Donelson died. According to the Executor, Donelson had contributed $123,336.82 to the Trust at the time of his death, resulting in a market value of $175,425.70. Jacquelin filed a claim against her father's estate, alleging that her father breached the property settlement agreement by failing to fund the Trust until it was equivalent to that of her sisters. After the Executor denied Jacquelin's claim, she filed a petition for a determination of disallowed claim in the Newport Probate Court. On June 15, 2012, the Probate Court, pursuant to G.L. 1956 § 33-11-16,[4] ruled that Jacquelin's claim should be decided by the

---

[3] Wells Fargo Bank, N.A. (the Trustee) is the successor in interest to First Security Bank of Utah, National Association, and the present trustee of the Trust.

[4] General Laws 1956 § 33-11-16 states, in pertinent part:

Superior Court, and this action ensued. Jacquelin alleged breach of contract in that "[Donelson] failed to carry out [the] provisions of the property settlement agreement." She also averred that, had the Executor allowed her claim to fund the Trust in accordance with Donelson's obligations, the Trust would have had a value of approximately $1,600,000.

On November 15, 2012, almost five months after the complaint was filed, Jacquelin unexpectedly passed away. Alison, the eldest Glassie sister, was appointed Executrix of Jacquelin's estate and was substituted as plaintiff in this action.[5] On April 29, 2013, defendant moved for summary judgment, arguing that plaintiff lacked the requisite standing to sue because generally only the trustee has capacity to file suit on behalf of the beneficiaries of a trust and that plaintiff's claim was not cognizable since the Trust had terminated on Jacquelin's death. The plaintiff filed a cross-motion for summary judgment and raised a new argument, contending that she was not suing on behalf of the Trust, but as a third-party beneficiary to the property settlement agreement. On December 2, 2013, after hearing, summary judgment was granted in favor of defendant on the basis that the right to bring the claim rested with the Trustee. Immediately following this pronouncement, plaintiff requested that summary judgment be

> "[I]f the probate court in its sole discretion finds that pleading, discovery and trial of the issues presented would be more efficiently presented in the * * * superior court * * *, the disallowance shall be affirmed by order of the probate court and the claimant shall bring civil action on the disallowed claim pursuant to § 33-11-48 * * *."

[5] Because Jacquelin did not execute a power of appointment for the Trust, pursuant to Section 2.7(b), Donelson's children are entitled to equal shares of the Trust assets. The Trustee filed a petition for interpretation of trusts and authorization to distribute trust assets in Utah, contending that Section 2.7(b) of the Trust did not limit the distribution of assets to Jacquelin's sisters. Alison and Georgia filed a counterclaim for, inter alia, a declaratory judgment that Section 2.7(b) required that the Trust assets solely be distributed to the two trusts established for their benefit. It was represented to the Court at oral argument that a settlement has been reached in the Utah case.

granted "without prejudice," in order for plaintiff to substitute the Trustee as plaintiff.  Counsel

for defendant responded that the Trustee would have to make a claim if it deemed fit, and the

Superior Court justice responded "[t]hat's true."[6]  No ruling was made on plaintiff's request.

Judgment for defendant was entered on December 10, 2013.[7]  The plaintiff timely

appealed on December 20, 2013.

## Standard of Review

"This Court reviews de novo a trial justice's decision granting summary judgment." Sola

v. Leighton, 45 A.3d 502, 506 (R.I. 2012) (quoting Lynch v. Spirit Rent-A-Car, Inc., 965 A.2d

417, 424 (R.I. 2009)).  "Summary judgment is appropriate only when the 'pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as [a] matter of law.'" Id. (quoting Plunkett v. State, 869 A.2d 1185, 1187 (R.I. 2005)).  "Only

when a review of the admissible evidence viewed in the light most favorable to the nonmoving

party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a

matter of law, will this Court uphold the trial justice's grant of summary judgment." Id. (quoting

---

[6] In May 2015, plaintiff inquired whether the Trustee would assign its rights to any claims against defendant arising out of the property settlement agreement.  On January 7, 2016, as part of a partial settlement in the Utah litigation, the Trustee assigned to plaintiff any "claims that [the Trustee] may possess, in its capacity as Trustee of [the Trust], against [defendant] arising out of an alleged breach of Donelson's obligations under a [p]roperty [s]ettlement [a]greement dated July 1, 1993[.]"  On May 10, 2016, plaintiff filed a petition for leave to file a claim out of time in the Newport Probate Court, seeking to, again, file a claim for breach of the property settlement agreement against defendant.  On June 14, 2016, the petition was denied.  A probate appeal is currently pending before the Superior Court.  In re Estate of Glassie, NP-2016-265.

[7] It was brought to this Court's attention that the final judgment entered on December 10, 2013, did not dispose of defendant's counterclaim for disinheritance based on a no-contest clause found in Donelson's Last Will and Testament.  On May 8, 2015, the papers in this case were remanded to the Superior Court.  On June 8, 2015, final judgment was entered pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure, nunc pro tunc, in place of the final judgment entered on December 10, 2013.  The counterclaim is still pending in the Superior Court.

National Refrigeration, Inc. v. Standen Contracting Co., 942 A.2d 968, 971 (R.I. 2008)). "[S]ummary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." Cruz v. DaimlerChrysler Motors Corp., 66 A.3d 446, 451 (R.I. 2013) (quoting DeMaio v. Ciccone, 59 A.3d 125, 129 (R.I. 2013)).

**Analysis**

In addressing the issues in this case, we undertake a task that is familiar to many aspiring attorneys facing a law school exam: examine the facts, spot the issue, and apply the applicable area of law. The plaintiff contends that her claims are governed by the law of contracts, specifically the principles relating to third-party beneficiaries. She argues that, because she was the intended third-party beneficiary under the property settlement agreement between her parents, she has standing to maintain this action. At a minimum, she contends, a genuine issue of material fact remains as to whether Jacquelin or the Trustee was the third-party beneficiary under what she characterizes as the ambiguous language of the property settlement agreement. The plaintiff also argues that Jacquelin's death did not affect the viability of this action because Jacquelin's right to redress survived her death.[8]

The defendant, on the other hand, posits that the law of trusts governs this action. Specifically, he maintains that, except in limited, unrelated circumstances, only a trustee is vested with standing to sue on behalf of trust beneficiaries. Similarly, defendant claims that the purpose of the Trust—to provide for Jacquelin's welfare—is no longer relevant because the Trust terminated on Jacquelin's death, in accordance with its provisions, and that any cause of action that the Trustee may have had also was extinguished.

Additionally, plaintiff argues that, should this Court determine that the Trustee was the

---

[8] Because we conclude that only the Trustee has standing to bring suit in this case we do not address this issue.

proper party to file suit, the Superior Court justice abused his discretion when he denied her motion to amend and substitute the Trustee as plaintiff in this action.

**A**

**Standing**

It is well settled that "[w]hen one party for valuable consideration, engages another by contract to do some act for the benefit of a third party, the latter who would enjoy the benefits, may maintain an action for breach of contract." Davis v. New England Pest Control Co., 576 A.2d 1240, 1242 (R.I. 1990); see also Cathay Cathay, Inc. v. Vindalu, LLC, 962 A.2d 740, 745-46 (R.I. 2009) ("This Court has long upheld 'the right of a third person to enforce a promise made by one person to another for the benefit of said third person, although the consideration does not move from such third person and although he was not cognizant of the promise when it was made.'" (quoting Blake v. Atlantic National Bank, 33 R.I. 464, 467, 82 A. 225, 226 (1912))). In order to prevail on a contract claim as a third-party beneficiary, the claimant must prove that he or she is an intended beneficiary of the contract. See Cathay Cathay, Inc., 962 A.2d at 745; see also Davis, 576 A.2d at 1242 ("If the third party is an intended beneficiary, the law implies privity of contract."). An intended beneficiary of a contract "stands in the shoes" of the promisee. Cathay Cathay, Inc., 962 A.2d at 746 (quoting Campione v. Wilson, 661 N.E.2d 658, 664 (Mass. 1996)).

When discussing the rights of third-party beneficiaries, this Court has looked to the Restatement (Second) Contracts § 302 (1981). See Cathay Cathay, Inc., 962 A.2d at 745. Section 302 of the Restatement delineates in part:

> "Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

- 7 -

"(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

"(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."

In Curato v. Brain, 715 A.2d 631, 634 (R.I. 1998), we affirmed a Superior Court justice's determination that a property settlement agreement between two divorcing parents, which provided that the parties' daughters would be entitled to receive real property under certain circumstances, was a third-party beneficiary contract for the daughters, who were the intended beneficiaries under the agreement. We declared that "there is no question that an intended third-party beneficiary, in this case the children, may sue on a contract made for his or her benefit." Id. at 635 (citing Davis, 576 A.2d at 1242; Elliott Leases Cars, Inc. v. Quigley, 118 R.I. 321, 330, 373 A.2d 810, 814 (1977)). Other jurisdictions also recognize that children who receive property under a property settlement agreement are third-party beneficiaries with standing to enforce the terms of the contract. See, e.g., Flanigan v. Munson, 818 A.2d 1275, 1280 (N.J. 2003) ("The law also is well settled that children of a marriage are third-party beneficiaries of a settlement agreement between their parents. * * * Based on the foregoing principles, we have no doubt that [the children] are beneficiaries of the property settlement agreement between their biological parents. As such, they have standing to enforce that agreement, including its insurance provision."); Orr v. Orr, 592 N.E.2d 553, 555-56 (Ill. Ct. App. 1992) ("[A]n adult child of divorced parents has standing to enforce the educational provision of the divorce decree on the basis that he or she is a third-party beneficiary. * * * [C]hildren who are beneficiaries under a contract entered into by their parents have standing to bring suit against their father to compel his compliance with the contract terms."); see also Noble v. Fisher, 894 P.2d 118, 123 (Idaho 1995).

Nevertheless, in the circumstances of this case, the record is clear that the property settlement agreement required Donelson to create a trust for Jacquelin's benefit and,

indisputably, he did so. Jacquelin's estate is before the Court challenging the amount of contributions made by her father and the manner in which the Trust was funded. The defendant argues that, once the Trust was created, Donelson's obligations to Jacquelin as a third-party beneficiary were fulfilled. In fact, defendant concedes that, if Donelson did not create the Trust as obliged, "[c]onceivably, Jacquelin * * * could have sought enforcement of the promise as [a] third-party beneficiary of the [property settlement agreement]." The defendant directs our attention to Restatement (Second) Contracts § 302 at cmt. f., illustration 20 (1981), "Trust and agency," which presents a complicated fact pattern that also could appear on a law school exam:

> "A, an insurance company, promises B in a policy of insurance to pay $10,000 on B's death to C as trustee for B's wife D. C is an intended beneficiary and may enforce his rights as trustee; D's rights as beneficiary of the trust and the contract are enforceable only in the manner in which rights of other trust beneficiaries are enforced."[9]

Importantly, cmt. f. at § 302 expounds: "[A]lthough the beneficiary of such a trust is a beneficiary of the promise [under the contract], his rights must be enforced in accordance with the law of [t]rusts." The plaintiff argues that the law of contracts applies in this case because the Trust was not in existence at the time her parents executed the property settlement agreement. We disagree.[10]

It is undisputed that the Trust was in fact created by Donelson, for Jacquelin's benefit, as required by the property settlement agreement. That benefit that was intended by the parties to the property settlement agreement was thereby achieved. The plaintiff's complaint is that

---

[9] In the instant case, Donelson would be A; Marcia would be B; the yet-to-be formed Trust would be C; and Jacquelin would be D.

[10] We note that it was represented by counsel at oral argument that the Trust provisions closely mirror those set forth in the trusts for Alison and Georgia, including common trustees, and that the trusts were drafted by the same attorney, who was provided with a copy of the property settlement agreement.

Donelson nonetheless was in breach because he failed to adequately fund the Trust: "[Donelson] shall pay into said Trust the sum of $10,000 each and every year until said Trust is equal to the amount of the Trusts for Alison and Georgia." However, this clause relates to Jacquelin's status as a beneficiary of the Trust and not as a third-party beneficiary of the property settlement agreement. Whether the Trust was in existence when the property settlement agreement was executed has no bearing on this analysis. Similar to the trust beneficiary in the above-noted fact pattern, Jacquelin is attempting to enforce a provision that requires funds to be contributed to a trust created for her benefit. Jacquelin's status is not that of a third-party beneficiary, but that of a "beneficiary," in the colloquial sense of the word, based on her status as the sole beneficiary of the Trust. Cf. Saks v. Damon Raike and Co., 8 Cal. Rptr. 2d 869, 877 (Cal. Ct. App. 1992) (holding that "trust beneficiaries [have no authority] to maintain an action as third party beneficiaries of contracts between the trustee and agents of the trustee concerning the internal affairs of the trust").

We also note that cmt. f. emphasizes the intent of the promisor and promisee when determining the relationships that arise when a trust is contemplated. A trust is recognized as a legal "entity." See Restatement (Third) Trusts § 2, cmt. a. (2003) ("[M]odern common-law and statutory concepts and terminology tacitly recognize the trust as a legal 'entity,' consisting of the trust estate and the associated fiduciary relation between the trustee and the beneficiaries."). Upholding this distinction is important when distinguishing between persons acting in their individual and representative capacities. See id. A settlor may opt to create a trust for a variety of beneficial reasons. We decline the invitation to blur the distinction between gifting to a beneficiary directly and doing so through a trust instrument.

Lastly, the Restatement (Third) Trusts § 107(1) (2012) provides that "[a] trustee may maintain a proceeding against a third party on behalf of the trust and its beneficiaries." Critically, a trust beneficiary may maintain a proceeding in limited circumstances when: "(a) the beneficiary is in possession, or entitled to immediate distribution, of the trust property involved; or (b) the trustee is unable, unavailable, unsuitable, or improperly failing to protect the beneficiary's interest." Section 107(2). Comment b. to § 107 reiterates this principle:

> "As holder of the title to trust property * * * and as the representative of the trust and its beneficiaries, the trustee is normally the appropriate person to bring * * * an action against a third party on behalf of the trust. * * * [A] beneficiary has no standing to sue a third party on behalf of the trust."

This principle is consistent with the basic concept that the beneficiaries of a trust instrument hold equitable title, while the trustee generally holds legal title. Whenever third-party liability is alleged, § 107 of the Restatement controls. "Third-party liability may arise not only from trust law * * * but also from other bodies of law * * *." Section 107, cmt. a. Therefore, whether the cause of action arises from trust law or, as in this case, from a contract dispute, standing to sue is controlled by the law of trusts.[11]

Because we are of the opinion that a trustee is the appropriate party to bring suit against third parties on behalf of trust beneficiaries, we conclude that plaintiff does not have standing to maintain this cause of action. In our opinion, once the Trust was created, the law of trusts became the governing law. From that point forward, Jacquelin's beneficiary status was that of a trust beneficiary, not of a third-party beneficiary to a contract. Accordingly, plaintiff lacked the

---

[11] Cf. Putnam Resources v. Pateman, 958 F.2d 448, 465 (1st Cir. 1992) ("[I]t is important to understand the principle of depecage. In legal parlance, depecage erects the framework under which different issues in a single case, arising out of a common nucleus of operative facts, may be decided according to the substantive law of different states.").

requisite standing to sue her father's estate for benefits she would have received based on her status as the beneficiary of the Trust.

## B

## Motion to Amend

The plaintiff argues that the Superior Court justice erred in denying her motion to amend the complaint in order to substitute the Trustee as plaintiff in this action. After the Court granted summary judgment, plaintiff requested that the "dismissal" be "without prejudice to substituting the trustee in[.]" The following colloquy ensued:

"THE COURT:          Well, I mean –

"[Defendant's Counsel]:   If the trustee makes a claim, the trustee makes a claim. I don't think it's a matter of substituting in. This trustee would have to make a claim.

"THE COURT:          That's true.

"[Plaintiff's Counsel]:   All right. Thank you, your Honor."

We are hard-pressed to conclude that this discussion rises to the level of a motion to amend the complaint in order to substitute the proper party, or that the plaintiff properly preserved this issue for appellate review. Notably absent from the dialogue is any request to amend the complaint; rather, the plaintiff asked that summary judgment be without prejudice. We deem this issue waived.

## Conclusion

For the reasons set forth herein, we affirm the judgment of the Superior Court. The papers in this case are remanded to the Superior Court.

- 12 -

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Alison E. Glassie et al. v. Paul Doucette, in his capacity as Executor of the Estate of Donelson C. Glassie, Jr. |
| **Case Number** | No. 2014-108-Appeal. (NC 12-262) |
| **Date Opinion Filed** | April 20, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Bennett R. Gallo |
| **Attorney(s) on Appeal** | For Plaintiff: Melissa M. Horne, Esq. |
| | For Defendant: R. Daniel Prentiss, Esq. |