June 27, 2024

**Supreme Court**

No. 2022-317-Appeal.
(NC 12-261)

Marcia Sallum Glassie            :

v.            :

Paul Doucette, in his capacity as            :
Executor of the Estate of Donelson
C. Glassie.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Marcia Sallum Glassie                    :

v.                                       :

Paul Doucette, in his capacity as        :
Executor of the Estate of Donelson
C. Glassie.

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** This appeal concerns an ongoing dispute over the Estate of Donelson C. Glassie. The matter was previously before this Court in *Glassie v. Doucette*, 159 A.3d 88 (R.I. 2017) (*Glassie I*). The plaintiff, Marcia Sallum Glassie (plaintiff), now appeals from a Superior Court judgment following a jury verdict entered, at least partially, in favor of the defendant, Paul Doucette, in his capacity as Executor of the Estate of Donelson C. Glassie (defendant or the executor). On appeal, the plaintiff argues that the trial justice "made numerous sweeping, unfairly prejudicial evidentiary rulings that prevented [the plaintiff] from presenting her case * * *." After thoroughly reviewing the record and considering the parties' written and oral arguments, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

The plaintiff and Donelson C. Glassie (the testator) were married in 1986, had three children, and were divorced in 1993. *Glassie I*, 159 A.3d at 91. According to their property-settlement agreement (the PSA or agreement), the testator was to execute a will that would not only treat his obligations under the agreement as "a claim against any assets in [his] [e]state" but also "specifically bequest to [plaintiff] an amount equal to said obligations." The agreement further provided that "[t]he obligation of [the testator] to maintain said assets and to bequest said sum to [plaintiff] shall be subject to modification by the Family Court from time-to-time as the obligations of [the testator] diminish under th[e] [a]greement."

A dispute soon unfolded over what the agreement required of the testator's will. In 1997, a Family Court justice determined that plaintiff was "entitled under the language of [the PSA] to the bequest of a sum certain equal to [the testator's] obligations." That sum was a "fixed figure," the hearing justice explained, and one that would "continue unless" the testator petitioned the Family Court for modifications consistent with any changes to his obligations. Following the decision of the Family Court, the testator executed a will that he soon amended with a codicil, which provided:

> "I give, devise and bequeath to [plaintiff] * * * the sum of
> $2,000,000.00, or such other amount as shall be then

- 2 -

required to fully satisfy all of my remaining obligations and responsibilities pursuant to the terms and provisions of * * * [the PSA] * * * as the same may be amended from time to time. To the extent such obligations and responsibilities remain executory, they shall survive my death, and shall be binding upon and constitute a charge upon my estate."

According to a stipulation filed in Family Court, plaintiff found this language "to be in full compliance" with the relevant provision of the PSA and, in 1999, the testator executed a will incorporating the codicil in full.

The record indicates that the testator satisfied his various obligations under the agreement (if not in full, then at least in part) as the years progressed. Not once, however, did he return to Family Court and seek modifications to the bequest in his will. *Glassie I*, 159 A.3d at 92. The testator died in 2011, and plaintiff filed a claim for $2,000,000 against the testator's estate a year later in Newport Probate Court, which defendant disallowed. *Id.* The plaintiff then filed suit in Newport County Superior Court, and in 2015 she was awarded $2,000,000, less the proceeds of a life insurance policy that she received upon the testator's death and attorneys' fees. *Id.* at 92-93.

In 2017, this Court vacated that Superior Court judgment on multiple grounds. *Glassie I*, 159 A.3d at 95-98. Relevant to the present appeal, we determined "that the disputed provision in the will is ambiguous" because it "does not clearly specify under what circumstances plaintiff is to receive the sum of $2,000,000 or the

- 3 -

circumstances under which she is to receive such other amount necessary to satisfy all of [the testator's] remaining obligations." *Id.* at 94-95. Because "a proper resolution of this matter require[d] factfinding and conclusions of law with respect to [the] testator's intent," we remanded the case to the Superior Court. *Id.* at 95.

**Jury Trial**

Following remand, a jury trial was held over seven days. We recite only the facts and testimony necessary to decide the issues on appeal.

On December 9, 2021, the trial justice heard pretrial motions, several of which are pertinent to this appeal. First, defendant asked "that plaintiff be precluded at trial from presenting evidence regarding, or mentioning in opening statement or argument, any allegation that [the testator] did not adequately fund the Jacquelin Caffrey Trust, II" (the Jacqui Trust or the trust).[1] The defendant submitted that,

---

[1] Article "Seventeenth" of the PSA, which was redacted for trial, provided as follows:

> "Whereas there is presently in existence two Trusts for the benefit of the minor child, Alison and the minor child, Georgia. Said Trusts are in the principal amount of $100,000. Therefore, the Husband agrees to create a similar trust within 45 days for the minor child, Jacquelin. He shall pay into said Trust the sum of $10,000 each and every year until said Trust is equal to the amount of the Trusts for Alison and Georgia. Said Trust shall be used to pay for the college and higher education of the minor child, Jacquelin."

because the claim of underfunding the trust is "currently pending in three different courts, [in] three different civil actions[,]" allowing plaintiff to make the claim here "raises the possibility of conflicting judgments down the road wherever that case actually ends up being tried." The trial justice then questioned plaintiff's counsel as to the issue of whether plaintiff has "a legitimate claim against those funds if she has no standing[.]"

The trial justice decided to take this motion under advisement "and see what happens when we get to that issue at trial, unless I can come up with a decision beforehand." At a later hearing, the trial justice ultimately granted defendant's motion *in limine*, noting that the claim regarding the trust was the subject of a separate action that would be tried in Superior Court. The trial justice stated that plaintiff "has and had no right to pursue that claim. She has no standing." The trial justice also reasoned that evidence of funding the trust would "confuse the jury and elongate th[e] trial without reason" because the issue is "clearly outside the purview of her claims."

---

The testator established the trust on August 11, 1993, and "[a]ccording to [defendant], [the testator] had contributed $123,336.82 to the [t]rust at the time of his death[.]" *Glassie v. Doucette*, 157 A.3d 1092, 1094-95 (R.I. 2017) (*Alison Glassie*). "Jacquelin filed a claim against her father's estate, alleging that her father breached the [PSA] by failing to fund the [t]rust until it was equivalent to that of her sisters." *Id.* While this case was pending, Jacquelin unexpectedly passed away, and her sister, Alison, has since been pursuing the claim in a separate action. *Id.*

At the December 9, 2021 hearing, defendant moved to withdraw certain admissions relating to the conveyance of the marital home and to performance of the testator's obligations under the PSA. The admissions read as follows:

"REQUEST NO. 40. As of the date of his death, there remained unfulfilled obligations owed to Plaintiff by Decedent.

"RESPONSE: Admitted that as of the date of Glassie's death, the PSA provisions stating, 'A Deed shall be prepared conveying the Husband's right, title and interest in and to the marital domicile to the wife. The Deed shall be held in escrow by Wife's attorney in accordance with a certain escrow agreement,' had not been fulfilled.

"REQUEST NO. 41. As of the date of his death, Decedent had not fully satisfied all of his remaining obligations and responsibilities pursuant to the terms and provisions of the PSA.

"RESPONSE: Admitted.

"REQUEST NO. 42. As of the date of his death, Decedent had not fulfilled all of his financial obligations arising out of the PSA.

"RESPONSE: Admitted.

"* * *

"REQUEST NO. 56. As of the date of Decedent's death, Decedent had not prepared a Deed conveying all of Decedent's right, title, and interest in and to the marital domicile to Plaintiff.

"RESPONSE: Admitted."

The plaintiff argued that defendant had not met the three-part standard set forth for withdrawal of admissions. The trial justice ultimately ordered that "[d]efendant's motion to withdraw admissions [be] granted as to the responses to requests 40 and 56; as to requests 41 and 42, the defendant may supplement his responses with explanations."

The plaintiff also moved to preclude evidence of the testator's extra-contractual conduct and defendant's post-death conduct fulfilling the testator's PSA obligations—specifically, paying off the mortgage and delivering the deed to the marital domicile. The trial justice denied this motion without prejudice to plaintiff's right to object to specific evidence.

At trial, plaintiff testified in support of her case and provided some information regarding her background, her marriage to the testator, their children, and their assets. She testified that she and the testator had three children: Alison; Georgia; and Jacquelin, who passed away in 2012. She indicated that she and the testator separated two months before Jacquelin was born and that he filed for divorce about two years later. She testified that the testator was not interested in having custody of the children, but property issues arose during the divorce; just before they separated, the testator purchased a house in Jamestown, and she and the children moved there in 1991.

The plaintiff testified that she and the testator signed the PSA on July 1, 1993, and it was her understanding that the agreement could not be modified unless it was done in writing and through the Family Court. The agreement provided that the testator would continue to pay the mortgage, property taxes, and insurance on the house in Jamestown for seven years, at which time the mortgage would be paid off. In addition, the testator was to execute a quitclaim deed to the property, which was in his name, and the deed would be held in escrow by an attorney until it was delivered to her. She testified that they agreed that she and the children would continue to live in the house.

The plaintiff then described the provision related to her bequest and explained how she returned to the Family Court in 1994 because she did not believe that the will the testator had drawn up complied with his obligations under the PSA. The will was entered into evidence as a full exhibit, and the relevant language of the will states:

> "I direct that all of my obligations and responsibilities pursuant to the terms and provisions of that certain Property Settlement Agreement dated July 1, 1993, entered into between my former spouse Marsha S. Glassie, [*sic*] and me, to the extent such obligations and responsibilities remain executory, shall survive my death and shall be binding upon and constitute a charge upon my estate."

She testified that the Family Court eventually "said that a specific sum was indeed necessary to be in [the testator's] will" and "that there had to be a figure, an actual

figure in the will." The defendant objected to testimony regarding the Family Court justice's statements and the objection was sustained. The plaintiff described negotiations, the exchange of information, and proceedings leading up to a Family Court order, following a March 1997 hearing, finding that "a specific sum of money shall be bequeathed to the [testator] in the Will of the [p]laintiff."[2]

The plaintiff then sought to admit a transcript of the Family Court's decision as a full exhibit, and defendant objected. After a sidebar discussion, the trial justice sustained defendant's objection, because he found that the transcript was not "appropriate." Nevertheless, the trial justice stated that plaintiff's counsel could ask questions about the Family Court's decision, which was marked for identification.

The plaintiff then confirmed that she was in court the day the Family Court justice rendered her decision, October 16, 1997. She testified that the justice ruled that the testator had to include a specific bequest in a specific dollar amount in his will and that he was required to return to Family Court to ask permission of the court if he wanted to change the specific bequest. The plaintiff stated that the testator drafted a new will after that hearing—the March 20, 1998 will—and that she objected to it because it gave the executor—defendant—power to make calculations as to the amount she was owed. She indicated that "it was understood that the

---

[2] The order is unsigned, but plaintiff testified that she was "pretty sure" that it was eventually signed. Defense counsel did not object to the order being entered as a full exhibit.

specific sum would continue unless [the testator] returned to Family Court to ask permission of the [c]ourt to change the specific sum."

The plaintiff testified that they returned to Family Court and the provision giving defendant power to calculate the amount owed to her was removed. The testator executed a codicil to his will, which plaintiff considered to have fulfilled the promises the testator previously made in the PSA. In August 1998, she stipulated that the codicil complied with the PSA. The plaintiff testified that she and the testator never returned to Family Court to modify the specific bequest.

During the trial, plaintiff filed a supplemental motion *in limine* again seeking to preclude defendant from presenting evidence of post-death actions by defendant, such as making mortgage payments on the marital domicile. The plaintiff asserted that such evidence would be irrelevant to determining the amount of the bequest and intent of the testator. The plaintiff argued:

> "The will does not contemplate, and the [t]estator did not intend, that post-death performance of the obligations by the [d]efendant would offset the money owed to the [p]laintiff under the bequest. Rather, the will clearly states that the money owed is either $2,000,000 or another amount 'as shall then be required' to satisfy the [t]estator's remaining obligations *at the time of his death*."

According to plaintiff, the relevant inquiry was whether there remained "open obligations as of the date of death[,]" and "everything that happened 14 months later after Ms. Glassie had filed her claim is not relevant and can only create the

impression to the jury that, well, she got this already, so she's been paid." Following the observation that the parties were seeking to present evidence relevant to their respective interpretations of the will, the trial justice determined that he would allow evidence to be presented regarding conduct that satisfied the PSA; however, he would instruct the jury that the transfer of property after death "cannot be considered as to what the testator intended."

The defendant then proceeded to cross-examine plaintiff regarding the specific provisions of the PSA and whether the testator had fulfilled them. Specifically, plaintiff was questioned as to a memorandum she had drafted itemizing all of the testator's obligations, with the exception of funding the Jacqui trust, which had been redacted. When asked whether the testator failed to satisfy any of the obligations discussed, plaintiff gave a "qualified yes" because "[t]he mortgage was not paid within seven years" or prior to the testator's death. The plaintiff was then asked whether defendant paid it off after the testator's death, and plaintiff confirmed that he did so fourteen months after the testator's death. The trial justice overruled plaintiff's objection to the question but instructed the jury that "the fact that the executor paid the mortgage as testified after Mr. Glassie's death has absolutely nothing to do with Mr. Glassie's intent associated with the provision of the will." The plaintiff did not object to the instruction.

The plaintiff also presented defendant as a witness. The defendant testified that plaintiff presented her claims in probate court in 2012 and that he denied them. He indicated that he "satisfied the obligations under the property settlement agreement and paid those as required as an executory obligation of the estate."

The plaintiff questioned defendant regarding the counterclaim he filed against plaintiff in 2012, which sought to enforce an in terrorem clause in the testator's will. She also questioned defendant about the amended counterclaim, which was filed in August 2018. Defense counsel then objected during that line of questioning, followed by a discussion at sidebar:

> "[PLAINTIFF'S COUNSEL]: So what you asked for in your new counterclaim, the one that we're here on today, is that not only should Marcia be disinherited --
>
> "[DEFENSE COUNSEL]: Objection."
>
> "* * *
>
> "THE COURT: You're asking who else gets disinherited in the counterclaim, the amended counterclaim?
>
> "[PLAINTIFF'S COUNSEL]: Yes."

It appears that plaintiff sought to question defendant about his request that Jacquelin should also be disinherited because plaintiff is Jacquelin's beneficiary and any payments to Jacquelin under the will "would wind up in Marcia's pocket and that's unacceptable." The trial justice indicated that he had not heard any evidence to that

effect, and defendant agreed that he would not "present any evidence about any other lawsuit or any other element."

The plaintiff argued that she was entitled to inquire about the nature of the amended counterclaim unless defendant agreed to withdraw that counterclaim with prejudice. The defendant agreed to "stipulate to a dismissal without prejudice of that part of the amended counterclaim which seeks a judgment that a forfeiture under the disinheritance clause against Marcia would also work to forfeit her interest as the beneficiary of the Jacquelin estate." The plaintiff argued that a dismissal without prejudice was "completely inappropriate," and expressed concern that there would be another trial on this issue. The plaintiff also stated that evidence regarding the amended counterclaim would show the jury how greedy defendant was, because he wished to "disinherit a dead daughter to get at Marcia and then take the proceeds from that and keep it from her full blood sisters." The trial justice sustained the objection and ruled that, by preventing plaintiff's proposed line of questioning, he was "limiting * * * the ramifications of this jury's finding as it relates to [plaintiff's] eligibility as a beneficiary of Jacqui's estate."

The plaintiff continued questioning defendant regarding his claim that plaintiff should be disinherited because she sought to remove him as executor. Eventually, defendant agreed to withdraw the amended counterclaim and moved to reinstate the original counterclaim. The trial justice suggested that the parties reduce

this agreement to writing; however, a stipulation to that effect could not be located in the record.

Before resting her case, plaintiff presented an extensive offer of proof regarding evidence she would have presented regarding the testator's failure to fund the trust, as required by the PSA. The trial justice indicated that plaintiff did not have standing to pursue the claim and that the evidence plaintiff sought to present would have extended the trial "exponentially" and would have confused the issues for the jury. The trial justice added that the timing of the offer of proof was improper because it should have been done prior to trial.

The defendant then presented his case, beginning with defendant's testimony. The defendant described his actions following the testator's death, including paying the mortgage on the Jamestown house and preparing an executor's deed for the transfer property. The trial justice overruled plaintiff's objection to this testimony, stating that he would "reiterate [his] previous instruction that this testimony is not relevant at all to [the testator's] testamentary intent at the time he executed the will." The defendant was also permitted to testify, over objection, that the testator purchased a life insurance policy in April 2000 naming plaintiff as beneficiary. The policy was not admitted as a full exhibit, and defendant was not permitted to testify as to the amount of the life insurance benefit. On cross-examination, defendant

acknowledged that he never saw any evidence that the testator was obligated to obtain life insurance for plaintiff's benefit.

After defendant rested his case, plaintiff moved for judgment as a matter of law on defendant's counterclaim. The trial justice heard the parties' arguments and decided to reserve decision on the motion. The jury was charged, and the parties presented their closing arguments.

The jury found: (1) that plaintiff failed to prove that the testator intended to leave her $2,000,000 in his will; (2) that defendant failed to prove that plaintiff's claim in this case justified forfeiture of any bequest she may be entitled to; and (3) that defendant failed to prove that plaintiff's petition to remove him as executor justified forfeiture of any bequest.

Judgment entered on August 23, 2022, in accordance with the verdict. The plaintiff filed a notice of appeal on September 9, 2022.

## II

## Standard of Review

"The admissibility of evidence is within the sound discretion of the trial justice." *Estrella v. Janney Montgomery Scott LLC*, 296 A.3d 97, 103 (R.I. 2023) (brackets omitted) (quoting *Cappuccilli v. Carcieri*, 174 A.3d 722, 729 (R.I. 2017)). "This Court will not interfere with the trial justice's decision unless a clear abuse of that discretion is apparent." *Id.* (quoting *Cappuccilli*, 174 A.3d at 729).

- 15 -

# III

## Discussion

The plaintiff submits that the trial justice erred in six evidentiary rulings, arguing that these rulings prejudiced her ability to show that the testator "failed to satisfy all his obligations under the PSA." Specifically, plaintiff submits that the trial justice erred in (1) preventing her from "presenting evidence regarding [the testator's] failure to fund the Jacqui Trust"; (2) preventing her from "presenting evidence regarding the Family Court's" decision; (3) permitting defendant "to withdraw his prior damaging admissions"; (4) permitting defendant "to present irrelevant and prejudicial evidence" of a life insurance policy the testator took out in favor of plaintiff; (5) permitting evidence of defendant's "post-death conduct" of making mortgage payments on the marital domicile; and (6) not allowing examination of defendant regarding his counterclaim, which sought to disinherit plaintiff. [3]

The defendant counters by making a blanket argument that each of plaintiff's arguments has been waived because they were not properly preserved on appeal. He

---

[3] In her specification of errors, plaintiff also makes the following one-sentence argument: "The Superior Court did not comply with this Court's earlier decision and instructions remanding this case for trial as to [the testator's] testamentary intent." The plaintiff did not brief this issue in her initial brief nor in her reply brief, after defendant pointed out the omission. Because the issue was not briefed, we need not address it.

additionally contends that "[t]he trial justice properly excluded the issue of funding of the Jacquelin Trust from trial."

**The Trust**

The plaintiff first argues that the trial justice should have allowed her to present evidence regarding the testator's failure to fund the trust. Specifically, she suggests that, by not being able to present evidence regarding the trust, the trial justice "created the absurd scenario where the parties were prevented from testifying completely and truthfully about the facts at issue." She claims that the evidence was necessary for the jury to understand the "reason and intent behind the parties' agreed-upon" $2,000,000 bequest. Furthermore, plaintiff asserts that the trial justice erred in determining that she "lacked standing to enforce the terms of the PSA based upon this Court's 2017 ruling in the Alison Glassie case (*Glassie v. Doucette*, 157 A.3d 1092 [(R.I. 2017) (*Alison Glassie*)]), and the fact that the Alison Glassie case, which sought compensation for the failure to fund the Jacqui Trust, was also pending in the Superior Court."

The defendant counters that the trial justice did not err in excluding evidence and testimony regarding the trust. He offers that this Court ruled in *Alison Glassie* that the "PSA promise to *create* [a] trust could be enforced by a beneficiary of the PSA, whether direct (Marcia) or third-party (Alison). However, once the trust was created * * * only the trustee, or a person acting on the trustee's behalf, can have

standing to assert an indebtedness to the trust." (Citing *Alison Glassie*, 157 A.3d at 1099-1100.) He submits, therefore, that the trial justice was correct in ruling that plaintiff did not have standing because, by creating the trust, the testator's promise to plaintiff, as a party to the PSA and a direct beneficiary, was fulfilled. Furthermore, defendant argues that injecting this claim "would have significantly complicated and prolonged the trial of the case below" and it would "have created the risk * * * of inconsistent verdicts on exactly the same factual and legal issues * * *." He additionally submits that, even if the trial justice's ruling was incorrect, plaintiff failed to preserve the claim for appellate review.

It is quite clear to us, however, that plaintiff preserved this issue for appellate review. *See Decathlon Investments v. Medeiros*, 252 A.3d 268, 270 (R.I. 2021) ("According to this Court's well settled raise-or-waive rule, issues not properly presented before the trial court may not be raised for the first time on appeal." (quoting *Federal National Mortgage Association v. Malinou*, 101 A.3d 860, 865 (R.I. 2014))). The plaintiff opposed defendant's motion *in limine* to prevent her from presenting evidence regarding the testator's alleged failure to fund the trust. This Court has observed that "[a] trial justice's decision regarding a motion *in limine* may be preliminary or absolute in nature." *ADP Marshall, Inc. v. Brown University*, 784 A.2d 309, 313 (R.I. 2001). Indeed, prior to trial, the trial justice determined that this was an appropriate case for a pretrial ruling on the admission of evidence and

- 18 -

ultimately granted defendant's motion *in limine*. The plaintiff also made an extensive offer of proof, before resting her case, of evidence that she would have presented regarding the testator's failure to fund the trust, as required by the PSA. The trial justice, again, rejected her arguments.

We ultimately discern no error in the trial justice's decision to prevent plaintiff from presenting evidence regarding the trust. After reviewing the motion *in limine* and plaintiff's objection, as well as hearing arguments on the matter, the trial justice found that the trust was "clearly outside the purview" of plaintiff's claims, and evidence regarding underfunding the trust "would do nothing but * * * needlessly confuse the jury and elongate this trial without reason."

We agree with the trial justice's decision to prevent the admission of evidence of the trust in light of this Court's analysis and ruling in *Alison Glassie*. There, this Court stated:

> "It is undisputed that the Trust was in fact created by [the testator], for Jacquelin's benefit, as required by the property settlement agreement. *That benefit that was intended by the parties to the property settlement agreement was thereby achieved*. [Alison's] complaint is that [the testator] nonetheless was in breach because he failed to adequately fund the Trust: '[The testator] shall pay into said Trust the sum of $10,000 each and every year until said Trust is equal to the amount of the Trusts for Alison and Georgia.' However, this clause relates to Jacquelin's status as a beneficiary of the *Trust* and not as a third-party beneficiary of the property settlement agreement." *Alison Glassie*, 157 A.3d at 1099 (emphasis added).

- 19 -

Furthermore, this Court stated that "whether the cause of action arises from trust law or, as in this case, from a contract dispute, standing to sue is controlled by the law of trusts[,]" and ultimately "a trustee is the appropriate party to bring suit against third parties on behalf of trust beneficiaries * * *." *Id.* at 1100. Indeed, plaintiff does not allege that she is trustee of the Jacqui trust.

Accordingly, we are of the opinion that the trial justice did not err in determining that plaintiff lacked standing to pursue a claim with regard to the trust and that allowing in evidence of the trust would "needlessly confuse the jury and elongate this trial without reason." We, therefore, hold that the trial justice did not err in preventing plaintiff from presenting evidence regarding the trust.

### Family Court Decision

Second, plaintiff contends that the trial justice erred in preventing her from introducing into evidence the transcript of the Family Court's 1997 decision as to the testator's obligations under the PSA. The plaintiff argues that the trial justice erred because the evidence was "plainly relevant to [the testator's] understanding of events surrounding the execution of his will and therefore to his testamentary intent."

The defendant submits that, although plaintiff was prevented from submitting "an unsigned, uncertified transcript from a hearing" into evidence, plaintiff was allowed to "introduce, through testimony, exactly the facts that she claims would have been proven by the transcript * * *." The defendant additionally suggests that

- 20 -

the transcript did not meet the requirements for a "public record" under Rule 802(8) of the Rhode Island Rules of Evidence, and that it was not authenticated, as required by Rule 902(4) of the Rhode Island Rules of Evidence.

After hearing argument as to the issue at sidebar, the trial justice stated, "I haven't reviewed the transcript in its entirety. I'm just concerned it's going to go into different directions and confuse the jury on an issue that's already been established by you * * *." The following colloquy then occurred:

> "[PLAINTIFF'S COUNSEL]: * * * The decision goes beyond [the court order].
>
> "THE COURT: Is it relevant here?
>
> "[PLAINTIFF'S COUNSEL]: Yes, it's relevant.
>
> "THE COURT: How is it relevant?
>
> "[PLAINTIFF'S COUNSEL]: Because [the Family Court justice] said to [the testator] point blank, you have to come back here to change the number.
>
> "THE COURT: Nobody is disagreeing with that.
>
> "[PLAINTIFF'S COUNSEL]: Of course they are. The whole theory here is that the number winds up being something we can't figure out until he's dead. That's the opposite of come back to me if you want it to be less than two million, come back to me and show me what your remaining obligations are and I'll let you change it to a million, to 500,000, to zero. That's what [the justice] ordered and the theory that we have from the defendant is we don't have to go back to Family Court, but now, magically, the number is zero.

"THE COURT: Well, doesn't the agreement when they agree on the two million, doesn't that specifically say that it's got to come back to Family Court if you want to change that number?

"* * *

"THE COURT: I don't think anybody is contesting the factual basis. It's putting in a transcript from a Judge that may contain extraneous information that is not relevant here."

The trial justice clarified that, although the transcript may be relevant, he did not think it was "appropriate" nor did he think allowing the entire decision in was "necessary." He decided, however, that he would allow plaintiff's counsel to question plaintiff as to whether the Family Court justice "confirm[ed] that th[e] number could only be changed by the Family Court[.]"

Our review of the transcript reveals that plaintiff then testified as to the ruling of the Family Court, ultimately bringing in the facts she hoped to gain from introducing the transcript into evidence. Indeed, when asked what the Family Court said in its decision, plaintiff replied "[t]hat [the testator] was to return to court to ask permission of the court if he -- to try to change the specific bequest, if he chose to." She also testified that the court ordered the testator "to create a new will with a specific sum." Furthermore, although the decision was not admitted, corresponding Family Court orders were entered into evidence as full exhibits.

Because plaintiff was able to present the Family Court's decree through plaintiff's testimony and Family Court orders, we are satisfied that the trial justice was acting well within his discretionary authority in not allowing the transcript of the Family Court's decision, which contained extraneous information—including discussion of the trust—to be admitted as a full exhibit.

**Withdrawn Admissions**

Third, plaintiff argues that the trial justice erred in allowing defendant to withdraw two admissions (40 and 56), which relate to the conveyance of the marital home, and to modify two additional admissions (41 and 42), which relate to full performance of the testator's obligations under the PSA.

It is well settled that "an admission that has been conclusively established may be withdrawn only '(1) if the admitting litigant has acted diligently; (2) if adherence to the admission might cause a suppression of the truth; and (3) if the withdrawal can be made without prejudice to the party who made the request' * * *." *In re McBurney Law Services, Inc.*, 798 A.2d 877, 883 (R.I. 2002) (quoting *Kelley v. K & H Realty Trust*, 717 A.2d 646, 648 (R.I. 1998) (mem.)).

The plaintiff submits that defendant failed to meet this standard for withdrawn admissions. She additionally argues that the trial justice failed to apply the test set forth *supra*, thereby committing error. The defendant contests these assertions and

- 23 -

specifically emphasizes the second element of the relevant test, stating "[t]here can be no dispute that [defendant's] revised admissions reflect the full truth."

Even if the trial justice may have erred in providing a somewhat cursory explanation for his decision, in the context of this case, we view this omission as harmless. The trial justice heard oral argument on the issue at a pretrial hearing, during which he asked some clarifying questions. He began his decision by laying out the criteria that must be met in order for the admission to be withdrawn. He then announced his decision on the issue:

> "Under the facts and circumstances of this case plus the arguments of counsel and the documents filed, I'm going to allow the defendant to withdraw his response to request number 40 and his response to request number 56 with explanation. The [c]ourt is going to allow supplementation of request number 41 and 42 as far as an explanation as to why he admits those interrogatories."

As noted by the trial justice, he had "been handling this case for three or four years" and "what [the testator] did and what [defendant] did regarding the deed and the house and payments of the mortgage" was not "new information." Given this context, it appears that, in granting the request, the trial justice viewed the withdrawn and modified admissions as a correction of what all of the parties knew to be true. Indeed, he stated:

> "I believe that the facts -- or I believe that the admissions are 41 and 42, based on [defense counsel's] representations, plus I think facts that everybody has known are inaccurate and it's hard for me to adhere to that.

- 24 -

> *** I am going to allow [defendant] to supplement, by way of explanation, the admissions on 41 and 42.
>
> And like I said, they satisfy the criteria and I believe in the interests of justice and to allow the jury to consider those under the context, to consider the facts in the context of which these events regarding the house, in particular, actually occurred is the right thing to do as far as trying to get to the truth of this matter."

Accordingly, giving great deference to the trial justice's evidentiary rulings, we affirm his grant of defendant's motion to withdraw admissions.

## Life Insurance Policy

Fourth, plaintiff submits that the trial justice erred in allowing defendant to present evidence of a life insurance policy taken out in favor of plaintiff because the policy had nothing to do with the testator's will or his performance of the obligations set forth in the PSA. She argues that the trial justice erred in ignoring this Court's ruling in *Glassie I*, which she claims held that it was error to reduce plaintiff's award by the amount set forth in the life insurance policy and that the policy had no bearing upon her entitlement to the bequest.

The defendant argues that this issue was not preserved for appellate review and that there is "no discernable argument regarding any error."

The plaintiff contests defendant's waiver argument. The plaintiff points us to an "objection to admission of a document referencing the life insurance policy" as well as to an objection following defendant's testimony about the life insurance policy, both of which were overruled. She indicates that, although these objections

- 25 -

were minimal, they were based on a lengthy discussion between counsel and the trial justice as to the admission of evidence of the life insurance policy, which had occurred earlier in the trial, and comported with Rule 103(a)(1) of the Rhode Island Rules of Evidence because the specific ground for the objection was apparent to the trial justice.

It is clear to us that plaintiff did not waive her argument as to the life insurance policy. She set forth a clear basis, outside the presence of the jury, that evidence of the life insurance policy was not relevant and should not be admitted, arguing that "the only point to bringing that in * * * is to try to suggest to the jury that she's been paid, if you will * * *." She then renewed her objection to admission of evidence of the life insurance policy. Given this context, it is apparent that the trial justice had notice of the basis of her objection. *See State v. Baptista*, 894 A.2d 911, 914 n.2 (R.I. 2006) ("The ground [for the defendant's objection asserted without specific grounds] was apparent from the context of [the] defendant's objection, demonstrated by the motion *in limine*, coupled with the trial justice's immediate cautionary instruction. While setting forth the specific grounds for an objection is preferred, we rule that in the context of this case, [the] defendant properly preserved this issue for appeal.") (emphasis omitted).

Having determined that plaintiff's argument is not waived, we turn to whether the trial justice erred in allowing evidence of the life insurance policy to be presented to the jury at trial.

As she did before the trial justice, in her argument to this Court, plaintiff points to our decision in *Glassie I* with regard to the life insurance policy. There, we were confronted with the hearing justice, having granted summary judgment in favor of plaintiff, "*sua sponte* reducing the amount of her bequest by the amount of the proceeds of a life insurance policy that [the] testator had purchased, naming plaintiff as the beneficiary." *Glassie I*, 159 A.3d at 96. We held that there was "no basis for linking the life insurance proceeds with the $2,000,000 bequest" because "defendant had not raised the issue in the summary-judgment proceedings, and we deem it error for the hearing justice to have done so." *Id.*

It appears that plaintiff misinterpreted this Court's holding, which was not that the life insurance policy was not relevant—which it may well be—but, rather, that the hearing justice erred in reducing the amount of plaintiff's bequest in a *sua sponte* manner, without argument from defendant. *See Glassie I*, 159 A.3d at 96.

Reviewing the facts before us for an abuse of discretion, we determine that the trial justice did not abuse his discretion in allowing evidence of the life insurance policy to be admitted. Following a lengthy discussion with counsel, he ultimately determined that evidence of the life insurance policy was admissible because

- 27 -

"anything that is relative or relevant to the compliance with the property settlement agreement, paying off the property settlement agreement[,]" is "relevant." Indeed, at least two of the exhibits that contain information related to the life insurance policy do so in the context of the testator's negotiation of his obligations under the will. It thus appears that information regarding the life insurance policy was introduced, not to unfairly prejudice plaintiff, but as evidence of the testator's testamentary intent.

Accordingly, we affirm the trial justice's decision to admit evidence of the life insurance policy.

**Defendant's Post-Death Conduct**

Fifth, plaintiff argues that the trial justice erred in allowing evidence of defendant's post-death performance of the testator's obligations under the will.

Specifically, plaintiff argues that "[i]t is inconceivable that any acts performed after [the testator's] death could be probative of [his] testamentary intent," and she points to her repeated objections to evidence of defendant's completing payment of the mortgage after the testator's death. The defendant submits that this argument is waived, and that "[t]here is no discernable argument here regarding any error."

In the same argument to the trial justice regarding the life insurance policy evidence, plaintiff challenged the introduction of defendant's post-death conduct, namely the transfer of property and payment of the mortgage. The trial justice, after

- 28 -

hearing the parties' arguments, stated: "I'm going to allow evidence in that allows or that satisfies the property settlement agreement. However, the transfer of property after the death is totally irrelevant to the testator's intent and I'm going to instruct the jury that it cannot be considered as to what the testator intended." During plaintiff's testimony, plaintiff's counsel objected to its introduction again:

> "[DEFENSE COUNSEL]: Instead, the [defendant] paid [the mortgage] after [the testator's] death; right?
>
> "[PLAINTIFF'S COUNSEL]: Objection, your Honor.
>
> "* * *
>
> "[PLAINTIFF'S COUNSEL]: Relevance, your Honor.
>
> "THE COURT: Ladies and gentlemen, I'm going to overrule the objection but I'm going to instruct you the fact that [defendant] paid the mortgage as testified after [the testator's] death has absolutely nothing to do with [the testator's] intent associated with the provision of the will. It has nothing to do with that. Okay. So you cannot consider that as it relates to [the testator's] intent. Okay. Go ahead.
> Any objection to that, [plaintiff's counsel]?
>
> "[PLAINTIFF'S COUNSEL]: No, your Honor."

After indicating to the trial justice that she was satisfied with the instruction, plaintiff now argues that said instruction was "insufficient to remedy the prejudice to [her] caused by the jury hearing 'totally irrelevant' evidence * * *."

"According to our well-settled raise or waive rule, issues that present themselves at trial and that are not preserved by a specific objection at trial,

- 29 -

sufficiently focused so as to call the trial justice's attention to the basis for said objection, may not be considered on appeal." *Johnston Equities Associates, LP v. Town of Johnston*, 277 A.3d 716, 748 (R.I. 2022) (quoting *ADP Marshall, Inc.*, 784 A.2d at 312). We deem plaintiff's argument waived. When asked whether plaintiff had any objection to the instruction, she said "[n]o"; she cannot now claim, in retrospect, that such instruction was in error. *See id.*

### Counterclaim

Finally, plaintiff submits that the trial justice erred in preventing her from examining defendant as to his counterclaim. She concedes that "only one objection was heard and sustained as to [her] questioning of [defendant] about the nature of his counterclaim," but at sidebar her "counsel explained that he wished to question [defendant] to lay bare his motives and litigation tactics to the jury and to impeach his credibility."

Our review of the transcript reveals that plaintiff was permitted to question defendant in general terms regarding his original counterclaim. The plaintiff then attempted to question defendant as to "who else gets disinherited in the [*amended*] counterclaim[,]" to which defense counsel objected, prompting a lengthy sidebar. The focus at that sidebar was on the substance of the amended counterclaim; there was no indication that plaintiff sought to question defendant as to the counterclaim for impeachment purposes. At one point plaintiff's counsel suggested that defendant

- 30 -

could "withdraw his counterclaim with prejudice so I don't have to deal with it, but unless he's willing to do that I'm entitled to inquire what the basis is for this counterclaim and what he's trying to accomplish." The statements made by plaintiff's counsel at sidebar were not sufficient to put the trial justice on notice of the credibility issue she now raises.

Because the plaintiff did not advance this theory in Superior Court, it has not been preserved for appellate review. *In re Da Cruz*, 306 A.3d 1054, 1059 (R.I. 2024) (holding that an argument is waived when a party "advance[s] a new theory on appeal that was not raised before the trial court" (brackets omitted) (quoting *State v. Bido*, 941 A.2d 822, 828-29 (R.I. 2008))).

## IV

## Conclusion

For the reasons set forth herein, we affirm the judgment of the Superior Court. The record may be returned to the Superior Court.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Marcia Sallum Glassie v. Paul Doucette, in his capacity as Executor of the Estate of Donelson C. Glassie. |
| **Case Number** | No. 2022-317-Appeal. (NC 12-261) |
| **Date Opinion Filed** | June 27, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian Van Couyghen |
| **Attorney(s) on Appeal** | For Plaintiff: Jeffrey K. Techentin, Esq. |
| | For Defendant: Daniel R. Prentiss, Esq. |